**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

NAHACH MANUEL GARAY, AKA
Nahach Guerrero, AKA Polar Bear,
*Defendant-Appellant.*

No. 18-50054

D.C. No.
2:17-cr-00188-
RGK-1

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted August 13, 2019
Pasadena, California

Filed September 17, 2019

Before: Mary M. Schroeder and Susan P. Graber, Circuit
Judges, and Michael H. Watson,[*] District Judge.

Opinion by Judge Schroeder

---

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction for being a felon in possession of a firearm in a case in which the district court denied the defendant's motion to suppress evidence found as a result of the search of his cell phone, seized from his rental car after a high-speed chase.

Under *Byrd v. United States* , 138 S. Ct. 1518 (2018), which clarified that Fourth Amendment standing is not jurisdictional, the panel did not need to reach the government's threshold contention that the defendant lacked standing to challenge the search of the phone before analyzing the merits of the defendant's Fourth Amendment claims.

The panel held that the district court did not err in concluding that the defendant's cell phone was lawfully seized as part of a valid inventory search, where there was no reason to conclude that the search was used to rummage for evidence. The panel noted that administrative errors should not, on their own, invalidate inventory searches.

The panel held that the district court correctly determined that probable cause supported the two warrants issued to search the defendant's cell phone. The panel explained that affiants seeking a warrant may state conclusions based on training and experience without having to detail that

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

experience. The panel concluded that there was a sufficient factual basis for the issuing magistrate judges to conclude, independently of the affiants' beliefs, that evidence might be found on the defendant's cell phone.

## COUNSEL

Michael Tanaka (argued), Los Angeles, California, for Defendant-Appellant.

Julia L. Reese (argued), Assistant United States Attorney; L. Ashley Aull, Chief, Criminal Division; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

SCHROEDER, Circuit Judge:

Nahach Garay appeals his conviction under 18 U.S.C. § 922(g)(1) as a felon in possession of a firearm. He challenges the denial of his motion to suppress evidence found as a result of the search of his cell phone, seized from his rental car after a high-speed chase. The phone contained photographs that tied him to the firearm that was recovered from the car. The district court ruled that the phone was lawfully seized in an inventory search of the car and that the warrants authorizing the search of the phone's contents were supported by probable cause.

The government's threshold contention on appeal is that Garay lacked standing to challenge the search of the phone

because he had abandoned any reasonable expectation of privacy in its contents when he ran from the car. We need not address this question. Under the Supreme Court's recent decision in *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018), such an inquiry is not jurisdictional, and, so, we need not consider it before we analyze the merits of Garay's Fourth Amendment claim. Because we conclude that the searches of both the car and the phone were lawful, we affirm.

## BACKGROUND

When San Bernardino County deputy sheriffs attempted, in March of 2017, to stop Garay for a traffic violation, Garay, with a passenger in the car, led them on a high-speed chase. The chase culminated in Garay's crashing the car into a ditch and attempting to flee on foot. A search of his person revealed thousands of dollars in cash and quantities of four different illegal drugs. He was placed under arrest.

With the car totaled in the ditch, the officers had to arrange to have the car towed. In preparation, they searched the contents of the car, finding two loaded rifles, ammunition, and two cell phones, one of which was claimed by the passenger. The officers filled out a Vehicle Report on which they listed some property (firearms), but they did not list other property in the "remarks" section. They booked the rifles, ammunition, and cell phones as evidence.

To search the contents of the cell phones, state law-enforcement officers obtained a warrant on the strength of an officer's affidavit describing the circumstances leading up to the discovery of the phones. These circumstances included the drugs and cash found on Garay's person and the affiant's knowledge, based on training and experience, that individuals

who possess firearms take pictures of them and communicate via text messages to further their criminal activity. When the case was referred for federal prosecution, a second, federal warrant was issued on the basis of similar information as well as on the "collective experiences" of law enforcement agents that felons prohibited from possessing guns use mobile phones to coordinate buying and selling guns.

Garay contends that the warrantless seizure of the phone itself was unreasonable and that the affidavits supporting the search of the contents of Garay's phone were inadequate.

## DISCUSSION

### I.   The Issue of Standing

The government argues that Garay abandoned any reasonable expectation of privacy he may have had in the contents of his phone when he left it in a totaled car and tried to flee from the arresting officers. This, the government argues, is a threshold issue that prevents Garay from having standing to challenge the search or seizure of the phone.

The Supreme Court recently clarified in *Byrd* that Fourth Amendment standing, unlike Article III standing in the civil context, is "not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim." 138 S. Ct. at 1530. We conclude that the search and seizure of Garay's cell phone were both reasonable under the Fourth Amendment. Accordingly, we need not decide whether Garay abandoned all reasonable expectation of privacy in the cell phone.

## II.  The Inventory Search and the Reasonableness of the Seizure of the Phone

Before towing or impounding a vehicle, officers may seize and inventory the contents of that vehicle in order to avoid liability for missing items.  *See South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).  If done according to standardized criteria and not in "bad faith or for the sole purpose of investigation," police inventory procedures satisfy the Fourth Amendment.  *Colorado v. Bertine*, 479 U.S. 367, 372 (1987).

The government correctly contends that the seizure of Garay's cell phone was justified as part of an inventory search in preparation for the car's towing.  Garay does not dispute that the decision to tow the car was a reasonable and good-faith exercise of the officers' care-taking function; Garay had just been arrested and the car was totaled and lying in a ditch.  *See also* Cal. Veh. Code § 22651(h)(1) (authorizing officers to tow car after driver is arrested).  It is well established that, once a vehicle has been impounded or towed, police are permitted to inventory the car's contents.  *Opperman*, 428 U.S. at 369.  Garay contends, however, that the officers used their authority to inventory the car's contents here to unlawfully rummage for evidence.  Inventory searches are consistent with the Fourth Amendment only if they are not used as an excuse to rummage for evidence.  *See Florida v. Wells*, 495 U.S. 1, 4 (1990) ("an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence").

To support his argument that this search was pretextual, Garay cites the absence of any inventory sheet listing the property found inside the car, a list required under the

sheriff's department's inventory policy. As noted above, the officers listed only some property in the Vehicle Report, though they booked additional property as evidence. The district court dismissed this argument, pointing out that a department's policies do not define constitutional rights. Such policies do, however, assist courts to determine whether an inventory search is legitimate, as opposed to pretextual. *See United States v. Wanless*, 882 F.2d 1459, 1463–64 (9th Cir. 1989) (invalidating an inventory search that deviated from required procedures).

In this case, we see no reason to hold that the officers were rummaging for evidence. The contents of the wrecked car had to be removed and safeguarded before the car was towed from the site. That is the essence of an inventory search. Because the site was in effect a crime scene, the items in the car were sensibly treated as evidence. The searching officer complied with the department's inventory-search policy in material respects. For instance, he obtained the tow truck driver's signature and noted the date and time of the driver's arrival; he obtained a file number for the inventory; he checked a box on the relevant inventory form indicating that items of potential value were in the car before identifying and booking the items recovered from the car as "evidence/property."

That the officer did not complete the inventory list that ordinarily would be completed as part of a department inventory search is not, on its own, a material deviation from policy. Other circuits have expressly recognized that the failure to complete an inventory form does not invalidate an inventory search. *See United States v. Loaiza-Marin*, 832 F.2d 867, 869 (5th Cir. 1987) (per curiam) ("failure to compile the written inventory does not render the inventory

search invalid"); *United States v. Trullo*, 790 F.2d 205, 206 (1st Cir. 1986) ("We will not hold that the officer's failure, technically, to follow the inventory form procedures for valuables meant it was not an inventory search."); *United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir. 1985) ("We also reject O'Bryant's contention that the inventory search exception to the general prohibition against warrantless searches was violated because [the officer] did not prepare a complete list of the briefcase's contents."); *United States v. Richardson*, 2000 WL 1273425, at \*2 (4th Cir. Sept. 5, 2000) (per curiam) (unpublished) ("[T]he failure to complete an inventory list does not render suspect either the motive for conducting the search or the reasonableness thereof.").

Further, we as well as several other circuits have upheld inventory searches despite other comparable administrative errors. *See, e.g.*, *United States v. Penn*, 233 F.3d 1111, 1115–17 (9th Cir. 2000) (inventory search lawful even though officer may have allowed passenger to remove personal property from the car before the search, which was "contrary" to "police and city policy"); *see also United States v. Williams*, 777 F.3d 1013, 1016 (8th Cir. 2015) (loose items of minimal value omitted from inventory list); *United States v. Garreau*, 658 F.3d 854, 857 (8th Cir. 2011) (stolen firearm omitted from inventory list); *United States v. Cartwright*, 630 F.3d 610, 616 (7th Cir. 2010) (incomplete inventory list); *United States v. Lopez*, 547 F.3d 364, 371 (2d Cir. 2008) (officer failed to "itemize each object").

The underlying principle was perhaps best stated in *United States v. Rowland*, where the Eighth Circuit explained that administrative errors should not, on their own, invalidate inventory searches: "There must be something else;

something to suggest the police raised 'the inventory-search banner in an after-the-fact attempt to justify' a simple investigatory search for incriminating evidence." 341 F.3d 774, 780 (8th Cir. 2003) (quoting *United States v. Marshall*, 986 F.2d 1171, 1175 (8th Cir. 1993)). The point is also illustrated by our recent decision in *United States v. Johnson*, in which we held that the search was not an inventory search "because the officers themselves *explicitly admitted* that they seized items from the car in an effort to search for evidence of criminal activity." 889 F.3d 1120, 1127–28 (9th Cir. 2018) (per curiam).

Here, by contrast, we find no reason to conclude that the inventory search was used to rummage for evidence. Given the circumstances leading up to the search, the officers no doubt expected to find evidence of criminal activity inside the vehicle. But that expectation would not invalidate an otherwise reasonable inventory search. *See United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir. 1993) (explaining that "dual motives" in inventory-search context are permissible). The district court did not err in concluding that Garay's cell phone was lawfully seized as part of a valid inventory search.

## III. Adequacy of Warrant to Search Cell Phone's Contents

Two magistrate judges, one state and one federal, issued warrants to search the cell phone's contents. Garay argues that the affidavits contained in the warrant applications were not supported by probable cause. The question before us, therefore, is whether the magistrate judges had a substantial basis to conclude that the warrant applications established probable cause. *See United States v. Celestine*, 324 F.3d 1095, 1100 (9th Cir. 2003). An affidavit in support of a

search warrant shows probable cause if, under the totality of the circumstances, it reveals "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The district court found the support for each warrant to be more than adequate. The affidavit in support of the state warrant described all the relevant circumstances. These included the high-speed chase leading up to the crash and Garay's attempt to flee, followed by Garay's arrest and the discovery of drugs and cash on his person, as well as the discovery of loaded guns, ammunition, and cell phones inside the car. The affidavit also recited the affiant's training and experience, reflecting that people who possess firearms "like to take pictures of [those items]" with their cell phones, and "will also communicate via text" regarding criminal activity.

When the case was later referred for federal prosecution, the affidavit for the federal warrant covered the same ground as the state affidavit, but was even more specific in stating that the affiant, based on her training and experience, as well as the "collective experiences" of other law enforcement agents, knew that felons prohibited from owning guns "often use digital devices, including mobile phones, to coordinate buying or selling those guns . . . to promote their possession of guns to others" and to contact suppliers for future purchases or referrals.

Garay nevertheless contends that both warrants lacked probable cause. He asserts that the affiants' belief on the basis of their "training and experience," unadorned by sufficient supporting details, cannot properly be considered in establishing probable cause. He argues that, before the affiants' beliefs may be taken into consideration, the affiants

must detail the nature of their expertise or experience and how that experience bears on the facts prompting the search.

Our standards, however, are not so stringent. We have long held that affiants seeking a warrant may state conclusions based on training and experience without having to detail that experience. *See, e.g.*, *United States v. Hendershot*, 614 F.2d 648, 654 (9th Cir. 1980) (finding that affiant's conclusion "based on [his] experience from prior bank robbery investigations" was proper; emphasizing that "[i]t is not necessary to detail that experience to determine that the conclusion is not capricious" (internal quotation marks omitted)). We have also held that magistrate judges may "rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987) (citing *United States v. Crozier*, 777 F.2d 1376, 1380 (9th Cir. 1985)).

Further, there was a sufficient factual basis for both magistrate judges to conclude, independently of the affiants' beliefs, that evidence might be found on Garay's cell phone. Garay relies on authorities in which the warrant applications had contained no factual basis from which to connect the place to be searched with the evidence sought. *See, e.g.*, *United States v. Underwood*, 725 F.3d 1076, 1086 (9th Cir. 2013) ("[T]he affidavit provides *no* factual basis for the conclusion that drug trafficking evidence would be found at Underwood's home."). But here, the affidavits explained all of the circumstances leading up to the search of the car that had been wrecked, and explained that Garay was then arrested for having drugs and cash on his person. These facts, coupled with the affiants' experience and beliefs, provide a reasonable basis to infer that evidence tying Garay to the

criminal activity of which he was suspected might be found on the cell phone. Magistrate judges may, as they likely did here, draw their own reasonable inferences about where evidence might be kept based on the nature of the suspected offense and the nature of the evidence sought. *Fannin*, 817 F.2d at 1382; *see also United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970).

We owe "great deference" to magistrate judges' probable-cause findings. *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011) (quoting *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006)). The district court correctly determined that the affidavits supporting both warrants in this case gave rise to at least a fair probability that evidence of a crime would be found on Garay's cell phone.

**AFFIRMED.**