**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

            v.

JOHN CHRISTOPHER MAGDIRILA,
AKA John Christopher Gambol
Magdrila, AKA Jose Francis
Hernandez-Castillo, AKA JC, AKA
Sike,

            *Defendant-Appellant.*

No. 18-50430

D.C. No.
2:17-cr-00729-
CAS-1

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted February 13, 2020
Pasadena, California

Filed June 23, 2020

Before:  Marsha S. Berzon, Ryan D. Nelson,
and Kenneth K. Lee, Circuit Judges.

Opinion by Judge R. Nelson;
Concurrence by Judge Berzon

# SUMMARY[*]

### Criminal Law

The panel affirmed the district court's denial of a criminal defendant's motion to suppress contraband found during an inventory search of a vehicle he was driving, vacated challenged conditions of supervised release, and remanded.

The panel held that the defendant preserved both of his central arguments on appeal challenging the denial of the motion to suppress.

The panel held that the officers' failure to precisely comply with Inglewood Police Department towing policy when they failed to completely fill out an inventory form did not render the search invalid. The panel explained that this case is considerably clearer than *United States v. Garay*, 938 F.3d 1108 (9th Cir. 2019), which held that the failure to complete the form under the circumstances was not a material deviation from policy and did not make the search invalid. The panel wrote that by creating a list of recovered items and incorporating it into a CHP 180 form, an officer complied substantially with the policy's direction to inventory the property in an impounded vehicle. The panel also held that, given the early stage at which an officer decided to impound the vehicle, it is a reasonable view of the evidence that the officer's intent at the time the vehicle was impounded was administrative rather than investigatory.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel vacated three conditions of supervised release as to which the government conceded error or made no argument, and remanded for revision. The panel vacated a disputed notification-of-risk condition, and remanded for the district court to craft a condition that accords with the defendant's criminal history.

Concurring, Judge Berzon wrote separately to note that she believes *Garay* was wrongly decided.

---

## COUNSEL

Joshua D. Weiss (argued) and Sonam Henderson, Deputy Federal Public Defenders; Amy M. Karlin, Interim Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Roger A. Hsieh (argued), Assistant United States Attorney; L. Ashley Aull, Chief, Criminal Appeals Section; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

---

## OPINION

R. NELSON, Circuit Judge:

During a search of a vehicle John Magdirila was driving, officers found methamphetamine, a firearm, and counterfeit currency. The district court denied Magdirila's motion to suppress this contraband, holding it was discovered during a valid inventory search. Magdirila then entered a conditional plea agreement and was sentenced to 41 months in prison. The district court also imposed General, Specific, and

Standard Conditions of Supervised Release.  We affirm the denial of Magdirila's motion to suppress.  We vacate, however, the challenged Conditions and remand for the district court to revise them.

# I

Officers Mark Robinson and Tyler Villicana were on patrol in Inglewood, California, as part of a tactical response to a surge in gang activity in the area.  At nearly 11:00 pm, Robinson observed a black Infiniti stopped in an alley with its engine running and "lights . . . illuminated as if the driver had the foot on the brake."  The vehicle was parked in violation of Inglewood Municipal Code 3-50 and lacked permanent—as opposed to dealer-issued—license plates, in violation of California Vehicle Code § 5200(a).

Villicana activated the cruiser's lights and siren, causing the vehicle's passenger, D.R., to "spontaneously" exit the vehicle.  Upon questioning by Villicana, D.R. admitted he was on parole and was detained pending further investigation.  After detaining D.R., Villicana ran a warrants inquiry for D.R.  The inquiry confirmed that D.R. was on parole and subject to a search condition.

As Villicana questioned D.R., Robinson approached the Infiniti and observed Magdirila sitting in the driver's seat with the engine on and his foot on the brake.  Magdirila admitted he did not have a driver's license and stated the vehicle belonged to a friend.  Robinson, pursuant to the Inglewood Police Department Vehicle Towing and Release Policy (the "Policy"), decided "from the moment that . . . [Magdirila] admitted he did not have a driver's license" to impound the vehicle.

Robinson then searched the glove compartment of the vehicle and found a bag of what he believed was crystal methamphetamine. When asked who the crystal methamphetamine belonged to, Magdirila claimed ownership. Robinson arrested Magdirila for possession of methamphetamine in violation of California Health and Safety Code § 11377(a), and searched the rest of the vehicle.

During the inventory search, Robinson found a lockbox in the back seat of the vehicle resting on top of a backpack. Magdirila claimed ownership of the lockbox and backpack. Inside the lockbox, Robinson found a loaded semi-automatic pistol, an air pistol, a USB drive, and Magdirila's EBT card.

Robinson's decision to impound the vehicle triggered a duty under the Policy to take an "accurate" inventory of the vehicle's contents on a CHP 180 form. The Policy requires officers to list "[a]ll property in a stored or impounded vehicle" and to "be as thorough and accurate as practical in preparing an itemized inventory." In the "REMARKS" section of the CHP 180 form, Villicana cross-referenced the police report and noted that the vehicle contained an "IPHONE/APPLE WATCH." In the police report, Robinson listed items contained in the car including, but not limited to, a black backpack, air pistol, ink cartridges, USB flash drive, and an American Express credit card.

Magdirila moved to suppress "all evidence and statements obtained as a result of his unlawful arrest, search, and questioning." The Government opposed suppression, relying primarily on declarations from Robinson and Villicana, along with the CHP 180 form and police report. During a hearing on the motion to suppress, the district court heard testimony from Robinson, Villicana, and Magdirila.

After the hearing, the district court denied Magdirila's motion to suppress the contraband and made the following factual findings:

1. "the Infiniti was illegally parked in an alleyway and . . . was without proper license plates";

2. "the officers impounded the Infiniti because the owner of the car was not present, the [defendant] was unlicensed and did not have any evidence that he was authorized to drive the car, and the car was parked in and blocking an alley";

3. "Robinson impounded the Infiniti pursuant to the [Inglewood Police Department's] Vehicle Towing and Release Policy . . . [at] the moment that defendant admitted that he did not have a driver's license"; and

4. "[t]he record demonstrates that Robinson conducted an inventory search of the Infiniti pursuant to the Vehicle Inventory requirements set forth in section 510.4 of Towing Policy, and that Villicana completed CHP Form 180 pursuant to the Vehicle Storage Report requirements set forth in section 510.2.1."

*United States v. Magdirila*, No. 2:17-CR-00729-CAS-1, 2018 WL 1472498, at \*4, \*6, \*7 (C.D. Cal. Mar. 22, 2018)

(internal quotation marks omitted).[1]  In light of those findings, the district court held that the contraband was the fruit of a properly conducted inventory search.  Magdirila subsequently entered a conditional guilty plea, and the district court sentenced him to 41 months in prison.

The district court also imposed Standard and Specific Conditions of Supervised Release.  Additionally, the district court incorporated and imposed conditions of supervised release from United States District Court for the Central District of California General Order 05-02—which we refer to as General Order Conditions.  The five General Order, Specific, and Standard Conditions relevant to this appeal are:

1. *General Order Condition 5*: "The defendant shall support his or her dependents and meet other family responsibilities," General Order 05-02, United States District Court for the Central District of California (Jan. 18, 2005), https://www.cacd.uscourts.gov/sit es/default/files/general-orders/GO-05-02.pdf (last visited June 3, 2020);

2. *General Order Condition 6*: "The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons," *id.*;

---

[1] The district court did not resolve the parties' dispute as to whether Magdirila had Fourth Amendment standing to challenge the search of his friend's vehicle.  The Government does not raise this argument on appeal.  We do not decide, therefore, whether Magdirila has standing and instead assume that he does.

3. *General Order Condition 14*: "As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement," *id.*;

4. *Specific Condition 2*: "As directed by the probation officer, the defendant shall notify specific persons and organizations of specific risks and shall permit the probation officer to confirm the defendant's compliance with such requirement and to make such notifications";

5. *Standard Condition 14*: "As directed by the probation officer, the defendant must notify specific persons and organizations of specific risks posed by the defendant to those persons and organizations and must permit the probation officer to confirm the defendant's compliance with such requirement and to make such notifications."

Magdirila timely appealed the denial of his motion to suppress and the imposition of these five conditions. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II

The denial of Magdirila's motion to suppress is reviewed de novo. *See United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012). The district court's underlying factual findings are reviewed for clear error. *See United States v. Barnes*, 895 F.3d 1194, 1199 (9th Cir. 2018). Where the district court does not make a finding on a precise factual issue relevant to the Fourth Amendment analysis, we "uphold a trial court's denial of a motion to suppress if there was a reasonable view to support it." *United States v. Gooch*, 506 F.3d 1156, 1158 (9th Cir. 2007).

## III

We address whether Magdirila has waived certain arguments challenging the district court's denial of his motion to suppress and then turn to whether the district court erred in its denial.

## A

We begin with the Government's waiver claims. Except for good cause, a motion to suppress must "be raised by pretrial motion." Federal Rule of Criminal Procedure 12(b)(3)(C); *see also United States v. Guerrero*, 921 F.3d 895, 897–98 (9th Cir. 2019). Defendants ordinarily may not raise new grounds for suppression on appeal. *See United States v. Keesee*, 358 F.3d 1217, 1220 (9th Cir. 2004). That is, a defendant may not (1) assert facts contradicting the facts he or she asserted before the district court, *id.*; (2) rely on facts that were not raised before or relied upon by the district court, *Guerrero*, 921 F.3d at 898; or (3) make a new legal argument in support of suppression, unless the issue does not affect or rely on the factual record developed by the parties, *see United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir.

2001), *overruled on other grounds by United States v. Perez*, 116 F.3d 840 (9th Cir. 1997) (en banc). An argument is not waived if "the district court nevertheless addressed the merits of the issue not explicitly raised by the party." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 n.8 (9th Cir. 2010) (internal quotation marks and citation omitted).

Here, Magdirila preserved both of his central arguments on appeal—that the officers "had an improper subjective motivation that rendered the search pretextual" and that "the inventory search was invalid because officers conducted their search in a manner inconsistent with the Policy."

With respect to his broad pretext argument, Magdirila claimed the inventory search was a "post-hoc justification" for an illegal search at inception. During the suppression hearing, Magdirila questioned Robinson about his state of mind during the time of the search, apparently to demonstrate pretext. Magdirila relies on no new facts or legal theories. Rather, he continues to assert that the inventory search was pretext for an illegal investigatory search. We conclude this argument was preserved.

Magdirila also preserved his narrower argument that the officers conducted their search inconsistent with the Policy, as a component of his pretext argument. Although Magdirila did not specifically challenge the officers' compliance with the Policy, the Government submitted a copy of the Policy and the CHP 180 form, as part of the suppression hearing. The district court, in turn, found that the officers properly filled out the CHP 180 form. That finding, in turn, undergirded the district court's holding that the officers performed a valid inventory search. Any argument regarding the officers' failure to comply with the Policy was therefore preserved.

**B**

We next address whether failure to completely fill out the CHP 180 form rendered the search invalid and, relatedly, whether any failure combined with other indicia of pretext rendered the search invalid.  Inventory searches that materially deviate from department policy can be invalid. *United States v. Garay*, 938 F.3d 1108, 1111 (9th Cir. 2019). However, minor noncompliance with department policies does not invalidate an otherwise lawful inventory search. *Id*. at 1112.

Additionally, a search conducted pursuant to a regulatory scheme is invalid if the officer's sole purpose in performing it is investigatory.  *United States v. Orozco*, 858 F.3d 1204, 1210 (9th Cir. 2017).  If, however, the officer's purpose is administrative, the inventory search is valid. *United States v. Johnson*, 889 F.3d 1120, 1126 (9th Cir. 2018). Importantly, "the mere presence of a criminal investigatory motive or a dual motive—one valid, and one impermissible—does not render an administrative stop or search invalid; instead, . . . [the Court] ask[s] whether the challenged search or seizure would . . . have occurred in the absence of an impermissible reason." *Id.* (internal quotation marks and citation omitted).

The officers' failure to precisely follow Section 510.4 of the Policy, in and of itself, does not make the inventory search invalid.  In *Garay*, sheriffs performed an inventory search of a vehicle after engaging in a high-speed chase but failed to fill out the inventory search form required by the sheriff's department policy.    938 F.3d at 1110–11. Nevertheless, we held that the failure to complete the form under the circumstances was not a "material deviation from policy" and did not make the search invalid. *Id.* at 1112.

This case is considerably clearer than *Garay*. Although the officers here did not include "all property" on the CHP 180 form as required by Section 510.2.1, they did fill out an inventory form that included some of the property, including an iPhone and an Apple watch. Moreover, the items contained in the vehicle, but unlisted on the CHP 180 form— including a backpack, Magdirila's welfare benefits card, the Sentry lockbox, an air gun, a flash drive, and ink jet toner cartridges,—were listed on the police report, which Villicana cross-referenced on the CHP 180 form. By creating a list of recovered items and incorporating it into the CHP 180 form, Villicana complied substantially with the Policy's direction to inventory the property in an impounded vehicle. His failure to precisely comply with the Policy did not render the search invalid.

Nor do we agree with Magdirila that there is not a "reasonable view to support" the trial court's implied conclusion that Robinson's purpose in conducting the search was administrative rather than investigatory. *Gooch*, 506 F.3d at 1158. Department Policy required the officers to impound the vehicle upon determining that Magdirila was unlicensed. Robinson established that fact during his initial questioning of Magdirila and decided to impound the vehicle *before* discovering methamphetamine in the glove compartment. Given the early stage at which Robinson decided to impound the vehicle, it is a "reasonable view" of the evidence that Robinson's intent at the time the vehicle was impounded was administrative rather than investigatory. *Id.* at 1158.[2]

---

[2] Because we hold the inventory search was proper, we do not address the Government's alternative arguments that (1) the police were

**IV**

Finally, we turn to the conditions of supervised release imposed by the district court. The Government concedes that General Order Condition 5, General Order Condition 6, and Specific Condition 2 must be struck or, in the case of General Order Condition 6, revised to avoid being struck for vagueness. The Government also makes no argument about General Order Condition 14, which we struck down in *United States v. Evans*, 883 F.3d 1154, 1164–65 (9th Cir. 2018). Accordingly, we vacate these conditions and remand for the district court to revise them.

The sole disputed condition is Standard Condition 14, which provides:

> As directed by the probation officer, the defendant must notify specific persons and organizations of specific risks posed by the defendant to those persons and organizations and must permit the probation officer to confirm the defendant's compliance with such requirement and to make such notifications.

Standard Condition 14 is nearly identical to General Order Condition 14, which we struck down in *Evans*. In *Evans*, we held General Order Condition 14 unconstitutional, in part because it failed to answer the question of *what* conduct the defendant needed to warn the public about. 883 F.3d at 1163. The revised language in Standard Condition 14

---

entitled to search the glove compartment because of D.R.'s parole search condition, or (2) the evidence would have been inevitably discovered.

does not cure this deficiency. We therefore vacate and remand Standard Condition 14.

We leave it for the district court on remand to craft a supervised release condition that accords with Magdirila's criminal history. *See United States v. Ped*, 943 F.3d 427, 434 (9th Cir. 2019) ("The district court 'is better suited to the job of crafting adequate but not overly restrictive conditions.'" (quoting *United States v. Sales*, 476 F.3d 732, 738 (9th Cir. 2007))).

On remand, the district court may wish to consider the language in United States Sentencing Guideline Manual § 5D1.3(c)(12), which suggests that a defendant's notification obligations should be limited to specific persons regarding specific risks *posed by the defendant's criminal record*. Magdirila argued on appeal that if such language was incorporated into Standard Condition 14, the revised condition would not be unconstitutionally vague.

**AFFIRMED IN PART and REVERSED AND REMANDED IN PART.**

---

BERZON, Circuit Judge, concurring:

I concur in the opinion in full. I write separately to note that I believe *United States v. Garay*, 938 F.3d 1108 (9th Cir. 2019), was wrongly decided.

In *Garay*, sheriffs performed an inventory search of a vehicle but did not create any list of the items found inside the car, *i.e.*, an inventory, in violation of both their department's inventory policy and the pivotal requirement of the inventory search exception to the usual Fourth

Amendment probable cause requirement.  938 F.3d at 1111. *Garay* held that the lack of any inventory is an insufficient reason to invalidate the inventory search.  *Id.* at 1112.  That conclusion is, in my view, just wrong.

The inventory search exception "serve[s] to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."  *Florida v. Wells*, 495 U.S. 1, 4 (1990) (quoting *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)).  Failure to produce any written inventory following a supposed inventory search is not, as held by *Garay*, 938 F.3d at 1112, a trivial administrative error in adhering to policy.  Where no inventory at all is produced, the property protection, insurance, and danger reasons for the exception all go up in smoke.  If there is no written record of the objects found in the vehicle, then there is no way to tell whether objects are taken once in police custody, no protection against false claims that property has disappeared, and no way to segregate dangerous objects while recording their existence should they need to be returned.

Moreover, that an officer purports to conduct an inventory search but fails to produce an inventory strongly suggests the investigatory nature of the search.  Law enforcement may not use an inventory search as a "ruse for a general rummaging."  *Wells*, 495 U.S. at 4.  Treating items seized from a vehicle "specifically as evidence of a crime [and] not as property held for safekeeping" invalidates an inventory search.  *United States v. Johnson*, 889 F.3d 1120, 1127–28 (9th Cir. 2018).  An inventory search that does not result in a written inventory goes a long way toward indicating that the officers did not treat recovered items as "property held for safekeeping," but rather as evidence of criminal activity.

*Wells* held that "[t]he policy or practice governing inventory searches should be designed to produce an inventory." 495 U.S. at 4. Given the Supreme Court's emphasis that an inventory search should aid property owners and law enforcement in tracking the category and condition of items seized from vehicles, and should not be used to disguise investigative law enforcement activity, the exception cannot apply where there is no written inventory at all.

That was not the case here, however. The error here really *was* a technical one—only some of the items recovered were recorded on the inventory form, but the rest appeared on the cross-referenced police report. I therefore concur in the opinion, but recommend reconsidering *Garay* en banc should the opportunity arise.