Filed 4/2/24  P. v. Mou CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEMOL MOU,<br><br>    Defendant and Appellant. | B326010<br><br>(Los Angeles County<br>Super. Ct. No. NA116646) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard Goul, Judge.  Affirmed.

R. Chris Lim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt Bloomfield and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Lemol Mou pleaded no contest to two counts of unlawful possession of a firearm by a felon. On appeal, Mou argues the trial court erred in denying his motion to suppress evidence discovered during a search of the vehicle Mou was driving. We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

One evening in March 2021, Long Beach Police Department (the department) Officer Chad Manis was stopped at an intersection in his patrol car. Mou was driving a van and had stopped at the same intersection. Manis saw that Mou was not wearing a seat belt. Manis turned his patrol car around, caught up to Mou, and activated his lights and siren. Mou pulled into a Pizza Hut parking lot and stopped.

Manis approached Mou's vehicle. At this time, Mou was wearing a seat belt. Manis asked for Mou's driver's license. Mou stated that he did not have a driver's license, and instead produced an identification card. Mou also told Manis that the vehicle was registered to his friend. Manis confirmed with the department that Mou had a suspended license. He then "pulled" Mou out of the vehicle and escorted him to the front of the patrol car.

Manis decided the vehicle needed to be towed. The vehicle was illegally parked in the Pizza Hut parking lot, and would "impede traffic for the business" and "obstruct the business and be a nuisance." In addition, the vehicle was parked in a high

---

[1] Mou pleaded no contest before trial. These facts are primarily taken from the testimony presented at the preliminary hearing.

crime area. Manis testified that the department had a "standardized policy" requiring vehicles to be towed under such circumstances. He called a tow company around this time, but he did not recall whether he called the tow company before or after he searched the vehicle.

Manis also testified that department policy required officers to conduct an inventory search of any vehicle being towed. According to Manis, this is a "systematic search" to document valuable items inside the vehicle before it is taken to the tow yard. Officers determine what items to catalog on a case-by-case basis, guided by their opinion of what is valuable. Two officers would each search one side of the vehicle and discuss their findings after the search was completed. As part of the inventory search, officers would make a list of valuable items on an "FI card" or "tow sheet, if it's available at the time." Otherwise, the officers would "take a mental note and write it down on the tow sheet at a later time."

Manis and the assisting officer, Officer Payan, began an inventory search of the vehicle Mou was driving. Manis searched the driver's side of the vehicle, and Payan searched the passenger's side and center console. Neither officer kept a contemporaneous record of valuable items identified during the search. Manis later noted in his police report that " 'Mou's access card and $100' " were found in the center console. The record does not include an FI card or tow sheet.

During the search, Payan found a loaded firearm under the front passenger seat. The officers handcuffed Mou and placed him in the back of their patrol car.

At the preliminary hearing, Manis testified to the above facts. Mou moved to suppress evidence recovered during the

search of the vehicle under Penal Code section 1538.5, subdivision (a).[2] Mou argued that the officers' decision to tow the vehicle was not reasonable because they could have instead moved it to a legal parking spot or contacted the registered owner. Mou also argued that the search was not a proper inventory search. Mou asserted the officers' actions reflected an investigative search seeking contraband.

The magistrate found Manis credible. Based on the totality of the circumstances, the magistrate concluded the officers "had authorization to, A, have the car towed; and B, conduct some limited search of the vehicle, which I believe they did in this case." The magistrate reasoned that the search was proper because it did not reach "the trunk or the backseats," and was instead restricted to "the front of the car, by the console and underneath the seats." The magistrate denied Mou's motion to suppress.

Mou renewed his motion to suppress in the trial court. The court denied the motion.

Mou pleaded no contest to two counts of unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1)) and admitted the aggravating factor of having served a prior sentence in state prison or county jail (Cal. Rules of Court, rule 4.421(b)(3)).[3] The court imposed a suspended sentence of three years and eight months, placed Mou on probation for two

---

[2] All further statutory references are to the Penal Code.

[3] After Mou was arrested, he told officers there was a gun in the home at which he was staying. Officers obtained a search warrant for the home and found a gun. The second charge was based on the later discovered firearm.

years, and ordered him to complete 200 hours of community service.  Mou timely appealed.

## DISCUSSION

## I.    Applicable Law and Standard of Review

Both the Fourth Amendment of the United States Constitution and Article I, section 13 of the California Constitution protect against unreasonable searches and seizures.[4]  A defendant may move to suppress evidence on the basis that it was obtained through an unreasonable search or seizure.  (§ 1538.5, subd. (a).)

"When a suppression motion is made before a magistrate in conjunction with a preliminary hearing, as in this case, the magistrate tries the facts, resolving credibility issues and conflicts in the evidence, weighing the evidence, and drawing appropriate inferences."  (*People v. Romeo* (2015) 240 Cal.App.4th 931, 941 (*Romeo*).)

On appeal, "we in effect disregard the ruling of the superior court and directly review the determination of the magistrate.  In doing so we draw all presumptions in favor of the magistrate's express or implied factual determinations and must uphold them if they are supported by substantial evidence."  (*People v. Shafrir* (2010) 183 Cal.App.4th 1238, 1244–1245 (*Shafrir*).)  We defer to the magistrate's credibility findings, "because only the magistrate heard the evidence, saw the demeanor of witnesses and was in a position to judge credibility."  (*People v. Woods* (1993) 12 Cal.App.4th 1139, 1147 (*Woods*).)

Next, "we independently apply the law to the factual findings [citations], determining de novo whether the factual

---

[4]    California courts apply federal constitutional exclusionary principles.  (*In re Lance W.* (1985) 37 Cal.3d 873, 879.)

record supports the magistrate's conclusion that the challenged search met the constitutional standard of reasonableness [citations]." (*Romeo*, *supra*, 240 Cal.App.4th at p. 942.)

## II.   The Magistrate Did Not Err in Denying Mou's Motion to Suppress

Mou argues that the decision to impound the vehicle was unreasonable.  He also contends there was insufficient evidence that the officers' search was a proper inventory search based on department policy rather than a pretextual investigatory search. We disagree.

### A.   The magistrate properly concluded the decision to impound was reasonable

"In the interests of public safety and as part of what the Court has called 'community caretaking functions,' [citation]" police may impound "automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." (*South Dakota v. Opperman* (1976) 428 U.S. 364, 368, 369 (*Opperman*).)  "Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." (*Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d 858, 864.)

Here, Manis testified that the vehicle was illegally parked in a Pizza Hut parking lot.  It was positioned in such a way that it would obstruct the business and cause a nuisance.  Mou did not have a valid driver's license, so he could not lawfully move the vehicle.  The decision to tow and impound the vehicle was reasonable under these circumstances. (*Halajian v. D & B Towing* (2012) 209 Cal.App.4th 1, 6, 15 [reasonable to impound

6

where the driver was unlicensed and the vehicle was in a private parking lot].) Manis also testified that the vehicle was in a high crime area, which further supports the decision to impound. (*Shafrir*, *supra*, 183 Cal.App.4th at p. 1248 [impoundment was reasonable "to avoid leaving a new luxury car in a known high-crime area"]; *Ramirez v. City of Buena Park* (9th Cir. 2009) 560 F.3d 1012, 1025 [reasonable to impound vehicle from drugstore parking lot due to risk of vandalism or theft].) The magistrate found Manis credible, and we defer to that finding. (*Woods*, *supra*, 12 Cal.App.4th at p. 1147.) Based on this evidence, the decision to impound was reasonable.

Mou argues the impoundment was unreasonable because the officers did not attempt to move the vehicle to a legal parking spot or contact its owner. Yet, "[t]he fact that there may be less intrusive means of protecting a vehicle and its contents does not render the decision to impound unreasonable." (*People v. Steeley* (1989) 210 Cal.App.3d 887, 892 (*Steeley*), citing *Colorado v. Bertine* (1987) 479 U.S. 367, 374–375 (*Bertine*).)

### B. The magistrate correctly determined the inventory search was reasonable

"When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, [citation]; the protection of the police against claims or disputes over lost or stolen property, [citation]; and the protection of the police from potential danger, [citation]." (*Opperman*, *supra*, 428 U.S. at p. 369.) These "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment."

(*Bertine, supra*, 479 U.S. at p. 371.)  However, "a valid inventory search must adhere to a preexisting policy or practice."  (*People v. Williams* (1999) 20 Cal.4th 119, 138 (*Williams*).)  " '[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.  The policy or practice governing inventory searches should be designed to produce an inventory.'  [Citation.]"  (*Id*. at p. 126.)

Here, substantial evidence supported the magistrate's finding that the search was conducted according to department policy and intended to produce an inventory.  Manis testified that department policy required officers to conduct an inventory search of any vehicle before impoundment.  He explained that the purpose of an inventory search is to identify and document items of value.  Two officers conduct a "systematic search" of the vehicle, with one officer taking each side.  Officers identify items to be inventoried based on a "case by case" determination of each item's value.  They record valuable items on an FI card or tow sheet during or after the search, if available.  Although general, these parameters are sufficient to establish the existence of a policy.  (*Steeley, supra*, 210 Cal.App.3d at p. 892 [inventory search was reasonable based on officer's testimony that it was "standard procedure" to " 'make sure what property is in the vehicle' " and prepare an inventory report].)  In addition, nothing in the record suggests the officers were seeking evidence of criminality.  The evidence supported the conclusion that the officers adhered to a "preexisting policy or practice" aimed at producing an inventory of valuable items in the vehicle.  (*Williams, supra*, 20 Cal.4th at pp. 126, 138.)

Mou contends there was insufficient evidence of any department policy guiding inventory searches, as required under

*Williams*, *supra*, 20 Cal.4th at page 138. However, this contention ignores Manis's testimony, in which he generally described the procedures used in inventory searches. Although Manis did not expressly state that these were *department* procedures, he testified that the "standardized policy for [the] department" required him to tow the vehicle and conduct an inventory search, and he detailed the process of a typical inventory search. This was sufficient. Indeed, courts have found far more limited testimony may establish the existence of a department policy. For example, in *People v. Green* (1996) 46 Cal.App.4th 367 at page 374, the officer merely testified: " 'It was an inventory search since we were impounding his vehicle.' " The court reasoned that although the officer "did not use the magic words 'standard procedure,' her matter-of-fact response indicates that an inventory search following impound of the vehicle is standard department procedure," and concluded the search was reasonable. (*Id*. at p. 375.)

Mou also asserts the evidence was insufficient to establish an inventory search because the officers did not fill out an FI card or tow sheet. However, failure to "complete the inventory list that ordinarily would be completed as part of a department inventory search is not, on its own, a material deviation from policy" and "does not invalidate an inventory search." (*United States v. Garay* (9th Cir. 2019) 938 F.3d 1108, 1112 (*Garay*); *United States v. Trullo* (1st Cir. 1986) 790 F.2d 205, 206.) Although Manis did not fill out the proper form, he created an inventory by logging the items of value in his police report, and otherwise "complied with the department's inventory-search policy in material respects." (*Garay*, at p. 1112.)

9

Mou further claims the officers "ignored several items" in the center console and trunk, thus suggesting they were not genuinely conducting an inventory. Yet, Manis testified the inventory search procedure was only to note items of "major value." Manis indicated he did not recall locating any valuable items in the vehicle aside from the two he logged in his police report, and there is no evidence the officers overlooked anything of value. Moreover, even if other items should have been logged, this error or administrative shortfall alone does not render the search invalid as an inventory search. (*Garay*, *supra*, 938 F.3d at p. 1111 [inventory search not invalid because "officers listed only some property in the Vehicle Report" but "booked additional property as evidence"].)

Finally, Mou argues the officers' conduct suggests the search was investigative. For example, Mou asserts the officers checked under the seats because that is a location where contraband is likely to be found. Yet, an inventory search may normally " 'extend[ ] to the open areas of the vehicle, including such areas under seats . . . .' " (*People v. Zabala* (2018) 19 Cal.App.5th 335, 343; *United States v. Edwards* (5th Cir. 1978) 577 F.2d 883, 894 ["the police, in conducting an inventory search, may ordinarily inspect . . . under the front seats"]; *United States v. Hernandez-Albino* (1st Cir. 1999) 177 F.3d 33, 42 [affirming denial of motion to suppress gun found under passenger seat during inventory search]; *United States v. Richardson* (7th Cir. 1997) 121 F.3d 1051, 1053, 1059 [same].) Indeed, as the magistrate recognized, the reasonableness of the search was supported by the fact that the officers *only* targeted the front seats, console, and glovebox, and did not search the trunk or back seats. Under the circumstances of this case, the search under the

front seats did not suggest the officers were merely rummaging for evidence of criminal activity.  (Compare *People v. Lee* (2019) 40 Cal.App.5th 853, 869 [affirming order finding no valid inventory search where the officer "admitted that he searched underneath the backseat because it is a common place to hide illegal items"]; *People v. Torres* (2010) 188 Cal.App.4th 775, 789 [inventory search was pretext for investigatory search where officer testified it was conducted per narcotics officers' request and intended to locate evidence of drug activity].)

Mou's reliance on *People v. Wallace* (2017) 15 Cal.App.5th 82 (*Wallace*) is misplaced.  In *Wallace*, the court concluded that a search of a vehicle was not a proper inventory search based on multiple factors, only one of which was the absence of evidence of the requisite inventory form.  (*Id.* at p. 92.)  There was no evidence that any officer decided the vehicle needed to be impounded, a necessary precondition to a valid inventory search.  (*Ibid.*)  The officer who searched the vehicle testified that he was there to arrest the driver on a domestic violence charge unrelated to the traffic stop, not to coordinate the towing or inventory of the vehicle.  (*Id.* at p. 86.)  He further testified that his search of the vehicle was, in part, incident to that arrest.  (*Ibid.*)  The officer "did not respond directly" when asked if the department's policy on inventory searches applied to the search he conducted.  (*Id.* at p. 92, fn.2.)

In contrast, here, Manis decided to have the vehicle towed and impounded before searching it.  He testified clearly that the department required an inventory search in this situation, and that the search he conducted was an inventory search.  The magistrate credited this testimony, and we defer to that finding.  (*Woods, supra*, 12 Cal.App.4th at p. 1147.)  Nothing in the record

11

suggests, as in *Wallace*, that the officers searched the car for reasons unrelated to impounding it to fulfill a community caretaking function. Sufficient evidence supported the magistrate's findings and we conclude the search and seizure of evidence from the car was reasonable under the Fourth Amendment.

## DISPOSITION

The trial court judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

LAVIN, Acting P. J.

EGERTON, J.

12