# United States Court of Appeals
## For the First Circuit

No. 17-1736

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL ANTONIO DEL ROSARIO-ACOSTA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Eleonora C. Marranzini, Assistant Federal Public Defender, with whom Eric A. Vos, Federal Public Defender, Vivianne M. Marrero-Torres, Assistant Federal Public Defender, Supervisor, Appeals Section, and Franco L. Pérez-Redondo, Research & Writing Specialist, were on brief, for appellant.

Joshua K. Handell, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, were on brief, for appellee.

August 3, 2020

**KAYATTA**, **Circuit Judge**. Rafael Antonio Del Rosario-Acosta was convicted of possession of marijuana and unlawful possession of a firearm by a prohibited person. Because we find that the district court erred by not suppressing evidence obtained through an unlawful search and seizure of his vehicle, we reverse the district court's denial of his motion to suppress, vacate his conviction, and remand for further proceedings.

## I.

Responding to a call from a gas station cashier reporting an armed person on the premises, three Puerto Rico Police Department officers found a sizable crowd at a gas station on July 5, 2014. After the officers ordered the crowd to disperse, Officer Luis Osorio-Acosta ("Osorio") observed Del Rosario walk to a red Toyota Corolla parked nearby. As he departed, Del Rosario momentarily stopped his car and appeared to drop something onto the ground. Del Rosario then drove onto nearby Street No. 7, where he parked and then walked back toward the gas station and the officers. When the officers asked him questions, he turned and ran back down Street No. 7, with the officers in pursuit on foot and by car.

As Del Rosario ran, the officers saw him: remove, tear open, and discard a plastic bag containing what appeared to be marijuana; stop by his car and place a key in the lock; and begin

- 3 -

running again, discarding a pill bottle. At that point, the officers caught up with Del Rosario and arrested him.

After the officers retrieved the plastic bag and the pill box (which contained eight Xanax pills and three Percocet pills), Officer Osorio took Del Rosario's car key and confirmed that it operated the lock on the car door. The affidavit in support of the criminal complaint, executed by Alcohol, Tobacco, Firearms & Explosive (ATF) Special Agent Charles Fernández, who was not at the scene, but who interviewed the officers afterwards, states that the officers then opened and searched the car with Del Rosario's consent. At the suppression hearing, the officers denied opening the car. The government attributed the contrary account in Agent Fernández's affidavit to translation error, notwithstanding the fact that he seemingly spoke both Spanish and English. The magistrate judge believed the officers, prompting an apparently incredulous district judge to hold a de novo hearing. After that hearing, the district judge also found himself persuaded by the translation error explanation.

Having been so persuaded, the district court then found as fact that the officers first opened the car after they had it towed back to headquarters. Upon inventory examination, the car was found to contain a revolver in the front cabin and ten small bags of marijuana under the carpet of the trunk. In due course, after unsuccessfully moving to suppress the evidence found in his

car, Del Rosario was tried, convicted, and sentenced to ten months' imprisonment. He now appeals, pressing two arguments: The district court clearly erred as factfinder in deciding that the officers did not open and search his car at the scene of the arrest; and in any event, the officers had no right to seize and tow his car, thereby setting it up for an inventory search. As we will explain, we need only consider the latter argument, which puts at issue the possible application of the community-caretaking exception to the warrant requirement. Ultimately siding with Del Rosario,[1] we reverse his sentence and conviction, and remand for a new trial.

## II.

### A.

"Generally, a law enforcement officer may only seize property pursuant to a warrant based on probable cause describing the place to be searched and the property to be seized." United States v. Coccia, 446 F.3d 233, 237-38 (1st Cir. 2006) (citing Horton v. California, 496 U.S. 128, 133 n.4 (1990)). The officers having obtained no warrant in this instance, the government relies primarily on the community-caretaking exception to the warrant requirement. See Cady v. Dombrowski, 413 U.S. 433, 441-43 (1973). This exception is based on the fact "that the police perform a

---

[1] At oral argument, the government agreed that Del Rosario raised and preserved this argument in the district court.

multitude of community functions apart from investigating crime," Coccia, 446 F.3d at 238, and traditionally have been "expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing and provide an infinite variety of services to preserve and protect public safety," id. (quoting United States v. Rodriguez-Morales, 929 F.2d 780, 784-85 (1st Cir. 1991)); see also id. (describing the community-caretaking function as "encompass[ing] law enforcement's authority to remove vehicles that impede traffic or threaten public safety and convenience" (citing South Dakota v. Opperman, 428 U.S. 364, 368-69 (1976))).

As applied to the seizure of an automobile, the community-caretaking function turns in great part on the police officer's reasons for seizing the vehicle. The officer must have "solid, noninvestigatory reasons for impounding a car." Rodriguez-Morales, 929 F.2d at 787; see also Colorado v. Bertine, 479 U.S. 367, 375 (1987) (holding that the decision to seize need be "on the basis of something other than suspicion of evidence of criminal activity"). Impoundment may not be a "mere subterfuge for investigation." Rodriguez-Morales, 929 F.2d at 787. Of course, if the officer has a proper noninvestigatory reason, she may act on it even if she also has (as will often be the case) a belief that impoundment and inventorying will find evidence of a crime. Id.; see also Coccia, 446 F.3d at 240-41.

Some circuits require that the noninvestigatory reasons for seizing property be manifest in a police department policy, protocol, or criteria guiding when a car is seized and when it is not. See, e.g., United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004) (holding that "[s]ome degree of 'standardized criteria' or 'established routine' must regulate these police actions . . . to ensure that impoundments and inventory searches are not merely 'a ruse for general rummaging in order to discover incriminating evidence'" (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)), but also not "requir[ing] that . . . a decision to impound or inventory must be made in a totally mechanical fashion"); United States v. Duguay, 93 F.3d 346, 351 (7th Cir. 1996) (requiring standardization of the "circumstances in which a car may be impounded"). But see United States v. Lyle, 919 F.3d 716, 731 (2d Cir. 2019) (looking to the "totality of the circumstances" to conclude that the impoundment was "reasonable under the Fourth Amendment even absent standardized procedures"); United States v. McKinnon, 681 F.3d 203, 208 (5th Cir. 2012) (per curiam) (evaluating the "reasonableness" of the community-caretaking impoundment "in the context of the facts and circumstances encountered by the officer" without reference to any standard criteria); United States v. Smith, 522 F.3d 305, 314 (3d Cir. 2008) (assessing the "reasonableness of the vehicle impoundment for a community

caretaking purpose" and declining to require standardized police procedures).

In Coccia, we held that the presence of a department protocol spelling out when there existed noninvestigatory reasons to impound a vehicle would be a significant factor cutting in favor of blessing a seizure done pursuant to such an objective protocol. See 446 F.3d at 238 (explaining that "an impoundment decision made pursuant to standardized procedures will most likely, although not necessarily always, satisfy the Fourth Amendment"). We also held, nevertheless, that the absence of such a protocol did not necessarily preclude reliance on the community-caretaking exception. Id. at 238-39. Rather, we held out the possibility that an examination of other factors in a given case might justify application of the exception even with no explicit, standardized protocol for noninvestigatory seizures. Id. Possible factors supporting the reasonableness of a seizure include: (1) a rental company owned the car, Petty, 367 F.3d at 1012-13 ; (2) the car could not legally be driven, United States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994); (3) the potential presence of dangerous materials in the vehicle, Coccia, 446 F.3d at 240; (4) the car was on the property of another, id.; (5) the defendant would be indisposed for a long time, id.; (6) the car was packed full of personal property that might be stolen, id.; (7) the car was in an area known for criminal activity, United States v. Ramos-Morales,

- 8 -

981 F.2d 625, 626-27 (1st Cir. 1992); (8) there was no one else immediately available to take the vehicle, Coccia, 446 F.3d at 240; and (9) the car was parked illegally or dangerously and might be best not left behind, Rodriguez-Morales, 929 F.2d at 785-86.

The record in this case contains no copy of any written protocol pertinent to the seizure of Del Rosario's car. When asked why they had the car towed, Officer Osorio testified that they did so "for an investigation." Asked why they needed the car to do an investigation, Osorio replied, "[b]ecause [Del Rosario] was in that vehicle and it was said that he had a weapon and it wasn't found on him." Officer Osorio did mention an unwritten protocol, apparently triggered by notifying a supervisor: "Once a supervisor is notified, then the whole protocol has to be followed" by taking the arrestee and the vehicle to the station. When asked, "Why was the vehicle going to be transported to the division?" Officer Osorio replied: "Because that was for investigation." This apparent "protocol" is not the type of formal and verifiable protocol that might provide comfort that the officers are not seizing the vehicle simply to search it. To the contrary, the apparently unwritten protocol as described by Officer Osorio seems to be nothing more than a practice designed to facilitate investigation of the crime by putting in motion an inventory search of the vehicle whether or not there is any need to protect the vehicle or the public.

- 9 -

So, we turn our attention to the other factors we identified in <u>Coccia</u>.  No rental company or other third party owned the car.  The car was parked legally on a quiet residential street one street over from where Del Rosario lived with his family.[2]  It created no more danger than did any other car lawfully parked on that street.  No evidence suggests personal property was visible inside the car, and the officers do not claim that the car faced any greater threat than that faced by any other car lawfully parked in the neighborhood.  There is no claim that the car was unregistered or uninsured, or in an unsafe condition.  Nor is there any suggestion that the driver would be held for long on the minor drug possession offense for which he was arrested.

Officer Osorio's claim that Del Rosario was reported by someone to have had a weapon that was no longer on his person, if true, certainly may have supported either a search or at least a seizure.  <u>See</u> <u>Coccia</u>, 446 F.3d at 240 ("Pursuant to the community caretaking function, police may conduct warrantless searches and seizures to take possession of dangerous material that is not within anyone's control." (citing <u>Cady</u>, 413 U.S. at 447-48)). There is, though, no evidence at all that anyone said or even

---

[2]  In its brief, the government contends that the car was parked unlawfully, on a yellow line in front of a fire hydrant. But there was no testimony to this effect and the district court made no finding that the car was illegally parked.

- 10 -

hinted that Del Rosario had a weapon at the time of the seizure.[3] The fact that an officer would use such an unsubstantiated claim to invoke the community-caretaking exception at a subsequent suppression hearing heightens our concern that the exception is advanced here as an after-the-fact justification for a warrantless investigatory search. The district court made no finding to the contrary, concluding instead that the officer's subjective intentions were not relevant.

The only Coccia factor favoring the government is that ostensibly there was no one else to move the car. But the relevance of that factor only arises when there is a need to move the car. In other words, when the other factors reasonably call for the vehicle to be moved, impoundment might still be unnecessary if there is another person able and willing to move and care for the car (e.g., a relative or friend of the arrestee). See, e.g., United States v. Infante-Ruiz, 13 F.3d 498, 503-04 (1st Cir. 1994) (finding impoundment of rental car not justified where another driver was available); Duguay, 93 F.3d at 353-54 (holding

---

[3] The cashier who made the call to police stated that there was an armed man on the premises of the gas station. However, there is no evidence suggesting that Del Rosario was the putative armed person. The cashier neither provided a description of the armed man nor supplied other identifying details, such as the person's name, age, or the type of firearm he possessed. The district court's conclusion that no such description was given was not clearly erroneous, nor does the government challenge it as such.

impoundment unconstitutional when another occupant of the vehicle was present at the arrest and could "provide for the speedy and efficient removal of the car from public thoroughfares or parking lots"). Nor is this a case in which a car was located in a random spot at the side of the road only because its driver was pulled over by the police. Rather, Del Rosario parked his car entirely of his own accord exactly where he wanted it parked. As best the officers knew, the car would have remained right where it was had they not decided to question or approach Del Rosario. We are not persuaded either by the government's passing suggestion that perhaps the officers were justified in seizing the vehicle because Del Rosario had left his keys in the door. Surely the officers could have secured the keys (just as they would have at the station had the keys been on Del Rosario's person).

All in all, it seems inescapable that the officers seized Del Rosario's car so that they could search it for evidence of a crime, and that they later sought to justify the search by invoking the community-caretaking exception. And while that exception might well apply even if there were also other motives for seizing the car, here the exception fits so poorly that it does not suffice to lift our eyes from the obvious conclusion that the seizure served no purpose other than facilitating a warrantless investigatory search under the guise of an impoundment inventory.

- 12 -

To be clear, we are not saying that an improper subjective motive renders the community-caretaking exception inapplicable. United States v. Hadfield, 918 F.2d 987, 993 (1st Cir. 1990) (explaining that "an officer's state of mind or subjective intent in conducting a search is inapposite as long as the circumstances, viewed objectively, justify the action taken"). Rather, we hold that, with no objective criteria supplied by a department protocol policy that furthers a noninvestigatory purpose, and with the factors listed in Coccia and our other case law weighing against any noninvestigatory need to move the car, the officers' testimony provides no basis for gaining comfort that invoking the exception serves as anything other than a subterfuge. See Rodriguez-Morales, 929 F.2d at 787. Such a search actually exceeds the invasiveness of a search at the scene of the arrest, as it both intrudes on the arrestee's limited privacy interests and in some cases may saddle the arrestee with a substantial and unwarranted towing and storage bill, in effect fining the person for being arrested.

**B.**

The government argues that, even if the community-caretaking exception cannot apply, the impoundment was permissible because the seizure and impoundment of the car was authorized under the Puerto Rico Uniform Forfeiture Act of 2011.

P.R. Laws Ann. tit. 34, § 1724f.[4]  To rely on section 1724f to justify the warrantless seizure of the vehicle, the officers must have had "probable cause to believe that all the conditions imposing forfeiture had been met" at the time when they made the decision to impound.  United States v. One 1975 Pontiac LeMans, Vehicle I.D. No. 2F37M56101227, 621 F.2d 444, 449 (1st Cir. 1980); see also Florida v. White, 526 U.S. 559, 564-65 & n.3 (1999); United States v. Gaskin, 364 F.3d 438, 458 (2d Cir. 2004) ("[L]aw enforcement officers who have probable cause to believe an automobile is subject to forfeiture may both seize the vehicle from a public place and search it without a warrant."); United States v. Brookins, 345 F.3d 231, 235 (4th Cir. 2003) ("[T]he police may seize an automobile without first obtaining a warrant when they have probable cause to believe that it is forfeitable contraband.").

Section 1724f authorizes the forfeiture of property "constituting or derived from any proceeds of, or used to commit, a felony and misdemeanor for which the law authorizes forfeiture, when said felonies and misdemeanors are classified by . . . controlled substances laws."  P.R. Laws Ann. tit. 34, § 1724f.

---

[4]  The government relies on "Puerto Rico Law 119," entitled the "Puerto Rico Uniform Impoundment Law," in its briefing.  We understand P.R. Laws Ann., tit. 34, § 1724(f) to be the codification of this law.  The parties have not provided us with reason to believe there is a material difference between these sources relevant to this case.

- 14 -

The officers made no claim that the impounded vehicle constituted the proceeds of any crime, or that the vehicle was obtained with any such proceeds.  Nor did the government ever try to substantiate below a claim that the car was "used" to commit the crime of merely possessing illegal drugs.  See United States v. Jones, 565 U.S. 400, 413 (2012) (declining to consider an alternative justification for the search under the Fourth Amendment where the government did not raise that argument below); cf. Gaskin, 364 F.3d at 458 (finding forfeiture where the vehicle had been used to meet with a drug couriers and transport a load of marijuana); White, 526 U.S. at 561 (noting that officers had observed the defendant using the vehicle to deliver cocaine on three separate occasions prior to its seizure by police).  However, there is no claim here that Del Rosario was using the car to, for example, sell drugs or make deliveries.  The government claimed in the district court only that Del Rosario was "in possession of the vehicle while he was being arrested" for possessing controlled substances.  Possessing one thing while also possessing another thing does not mean that one uses the former to possess the latter.  Nor has the government developed any argument or presented any precedent suggesting that driving a car while carrying drugs in one's pocket constitutes a "use" of the car to commit the offense of drug possession.  Common sense suggests otherwise, just as one would not say that he used a bus to commit the offense had he taken

a ride on public transit with the drugs in his pocket.[5]  Without more, the government has not convinced us that it had probable cause to seize the vehicle pursuant to this forfeiture statute.

## C.

The government also relies on the doctrine of inevitable discovery.  The argument seems to be (although it is not entirely clear) that the officers would have lawfully searched the car at the scene had they not opted to seize and impound the car.  But, the doctrine of inevitable discovery means what it says; it requires reference to "demonstrated historical facts," shown by a preponderance of the evidence, to show that the evidence would have come to light through lawful means.  Nix v. Williams, 467 U.S. 431, 444–45 & n.5 (1984); see also Zapata, 18 F.3d at 978 ("Evidence which comes to light by unlawful means nonetheless can be used at trial if it ineluctably would have been revealed in some other (lawful) way . . . .").  At trial, the officers fervently disavowed any intent to search the car at the scene. And the government does not develop from the record any reason to think that the officers inevitably could have lawfully conducted such a search.

---

[5]  In filling out the inventory forms at the station, the officers did not claim that the vehicle was seized due to involvement with a crime.

With no further argument advanced to justify the warrantless seizure of Del Rosario's vehicle or the decision not to suppress the results of that seizure, the failure to grant Del Rosario's motion to suppress the evidence found in the inventory search was error.[6]

## III.

For the reasons stated above, we **reverse** the denial of the motion to suppress, **vacate** Del Rosario's conviction, and **remand** for further proceedings.

---

[6] Having found that suppression was required for this reason, we need not address Del Rosario's alternative argument that the officers in fact searched the car unlawfully at the scene before impounding it.