# United States Court of Appeals
## For the First Circuit

No. 20-1340

UNITED STATES,

Appellant,

v.

PABLO L. RIVERA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Donald C. Lockhart, Assistant United States Attorney, with
whom Andrew E. Lelling, United States Attorney, was on brief, for
appellant.
Jonathan Scott Lauer, Assistant Federal Public Defender, for
appellee.

February 22, 2021

**BARRON**, **Circuit Judge**.    This appeal concerns an inventory search of a vehicle that a Massachusetts State Police ("MSP") trooper stopped on a highway in 2019.  Based on the fruits of that search, the driver of the vehicle was charged with various federal gun and drug offenses.  He thereafter moved to suppress the fruits on Fourth Amendment grounds, given that the search was warrantless and undertaken without probable cause.

The government argued in response that the search comported with the Fourth Amendment because it was not conducted for an investigatory purpose and instead constituted a proper exercise of what is known as law enforcement's "community caretaking function," Boudreau v. Lussier, 901 F.3d 65, 71 (1st Cir. 2018), given that the vehicle needed to be removed from the roadside for public safety reasons, the trooper had called for a tow truck to come to the scene to remove it, and the search itself had been carried out pursuant to standardized procedures.  The District Court ruled, however, in favor of the defendant, because it concluded that there was no community caretaking justification for the inventory search, as the trooper had made clear that the defendant would be permitted to ride with the tow truck driver to the impound lot.  We now reverse the District Court's decision to grant the motion to suppress.

The defendant is Pablo Rivera, and the vehicle that he was driving was pulled over by MSP Trooper Vladimir Louissaint on Route 84 in Sturbridge, Massachusetts on February 8, 2019. Trooper Louissaint claimed to have pulled Rivera over for driving in the left lane even though other lanes were available for travel. See Mass. Gen. Laws ch. 89, § 4B ("Upon all ways the driver of a vehicle shall drive in the lane nearest the right side of the way when such lane is available for travel, except when overtaking another vehicle or when preparing for a left turn.").

After making the stop, Trooper Louissaint discovered Rivera was driving without a valid license. Rivera was the only occupant of the vehicle and could not legally drive it.

Trooper Louissaint ordered the vehicle towed pursuant to an MSP policy ("the MSP impoundment policy") that authorizes a trooper to have a vehicle removed from the side of a highway if there is no licensed occupant. The trooper told Rivera that he was not under arrest and that, as a result, he could ride with the tow truck driver to the impound lot.

Before the tow truck driver arrived, Trooper Louissaint informed Rivera that he needed to inventory the vehicle prior to having it towed. Trooper Louissaint then began to conduct an inventory search of the vehicle pursuant to a second MSP policy ("the MSP inventory search policy"). That policy required an

inventory search of any vehicle towed pursuant to the MSP impoundment policy.

While conducting the search, the trooper discovered a brown, rock-like substance -- which was later found to be heroin -- and drug paraphernalia in a backpack in the trunk of the vehicle Rivera had been driving. He asked Rivera what the substance was, and Rivera told him that it was salt. Trooper Louissaint then placed Rivera under arrest, drove him back to the state police barracks, further inventoried the backpack, and discovered a loaded firearm.

Rivera was charged in a three-count indictment in the District of Massachusetts with possessing a firearm and ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1); possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Rivera then moved to suppress the evidence discovered pursuant to the inventory search of his vehicle on the ground that this warrantless search violated the Fourth Amendment. He further contended that his roadside statement that the discovered substance was "salt" and the search of the backpack at the barracks (during which the police discovered the gun) were fruits of that initial illegal search and must be suppressed as well.

The government contended that the inventory search fell within the community caretaking function, which "is one of the various exceptions to the Fourth Amendment's requirement that law enforcement officers have probable cause and obtain a warrant before effecting a search or seizing property." Boudreau, 901 F.3d at 71. Under that exception, law enforcement officers, in "their role as 'community caretakers,'" may "remove vehicles that impede traffic or threaten public safety and convenience" without obtaining a warrant. Id. at 72 (quoting United States v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006)); see also Colorado v. Bertine, 479 U.S. 367, 371 (1987) ("[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment.").[1] The District Court rejected that contention, however, because it concluded that, as Rivera was permitted to ride to the impound lot with the tow truck driver, there was no non-investigatory reason to conduct the inventory search in this case. United States v. Rivera, No. 19-cr-40007-TSH, 2020 WL 525676, at *2 (D. Mass. Feb. 3, 2020). The government moved for reconsideration, which the District Court summarily denied on February 19, 2020. The government then timely filed this appeal on March 19, 2020. See United States v. Ibarra, 502 U.S. 1, 2 (1991) (per curiam). We have jurisdiction under 18 U.S.C. § 3731.

---

[1] Rivera does not object to the trooper's decision to have his car towed.

On review of a district court's order granting a motion to suppress, we apply a "mixed standard," reviewing "findings of fact and credibility determinations . . . for clear error and . . . conclusions of law de novo." United States v. Dubose, 579 F.3d 117, 120 (1st Cir. 2009) (quoting United States v. Andrade, 551 F.3d 103, 109 (1st Cir. 2008)). We view the facts in the light most favorable to the district court's ruling, but only to the extent they are not clearly erroneous. Id.

The MSP inventory search policy has three stated aims: (1) to protect "[t]he vehicle and its contents"; (2) to protect "[t]he Department and tow company against false claims of lost, stolen, or vandalized property"; and (3) to protect "[t]he member(s) [of the MSP force] and the public from dangerous items that might be in the vehicle." It is clear that an inventory search carried out to serve those purposes could be compliant with the Fourth Amendment (even though done warrantlessly and without probable cause), see South Dakota v. Opperman, 428 U.S. 364, 369 (1976), and the District Court did not suggest otherwise. Instead, it held that the search of Rivera's car did not serve any of those purposes, as "[p]olice safety was not compromised because [Rivera] was seated on a guard rail awaiting the tow truck" and there was no risk to Rivera's property because Rivera planned to ride with the tow truck driver to the tow yard. Rivera, 2020 WL 525676, at

*2. For that reason, the District Court held that the search could not be justified as an exercise of the community caretaking function and so violated the Fourth Amendment. Id.

We are not persuaded. Even if Rivera himself posed no danger to the trooper, the items in the vehicle might have. See Bertine, 479 U.S. at 373 & n.5 (explaining that police may conduct an inventory search out of a concern regarding "dangerous instrumentalities" and to "check for any dangerous items" in the vehicle such as "explosives" (quotation marks and alterations omitted)). And, even though Rivera would have been riding in the tow truck, given the late hour and the fact that Rivera could not legally operate his vehicle, there was a risk that the vehicle would not be recovered promptly. Accordingly, there still remained the concern about "false claims of theft." Id. at 373. Thus, the District Court erred in granting Rivera's motion to suppress on the ground that the inventory search that Trooper Louissaint conducted did not serve any of the purposes for which such searches are permitted under the Fourth Amendment for the simple reason that the search at issue here did serve those purposes.

Rivera separately contends that we may affirm the District Court's grant of his motion to suppress on the alternative ground, not relied upon by the District Court, that the initial traffic stop violated the Fourth Amendment because Trooper Louissaint lacked reasonable suspicion to pull over the vehicle

Rivera was driving. But, Rivera does not dispute that Trooper Louissaint testified that he stopped Rivera after Rivera had driven in the left lane for approximately half a mile, even though the center and right lanes were available for travel and even though only a few other cars were on the road, in the distance. Nor does Rivera dispute that Massachusetts law provides that "the driver of a vehicle shall drive in the lane nearest the right side of the way when such lane is available for travel, except when overtaking another vehicle or when preparing for a left turn." Mass. Gen. Laws ch. 89, § 4B; see also Heien v. North Carolina, 574 U.S. 54, 61 (2014). Thus, this aspect of Rivera's attempt to defend the District Court's granting of his motion to suppress is without merit.

Moreover, in light of our ruling on this score, there is no merit to Rivera's additional argument that we may affirm the District Court's grant of his motion to suppress on the ground -- also not relied upon by the District Court -- that the inventory search was in fact motivated solely by an investigatory purpose. It is true that an inventory search may be challenged on the ground that it was undertaken pretextually. See United States v. Del Rosario, 968 F.3d 123, 128-29 (1st Cir. 2020). But, Rivera expressly premises his pretext claim here on the fact that Trooper Louissaint failed to follow the letter of the MSP inventory search policy after having made the vehicle stop itself without having

- 8 -

any reason to suspect that there had been a traffic violation. Thus, our conclusion that the record shows that the trooper did have such reasonable suspicion to make the stop defeats this alternative argument for sustaining the District Court's ruling as well.

## III.

For the foregoing reasons, we **<u>reverse</u>**.