# United States Court of Appeals
## For the First Circuit

No. 19-2127

UNITED STATES OF AMERICA,

Appellee,

v.

RICHARD SYLVESTER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Thompson, and Barron,
Circuit Judges.

Jamesa J. Drake, with whom Drake Law LLC and Richard S. Berne
were on brief, for appellant.
Julia M. Lipez, Assistant United States Attorney, with whom
Halsey B. Frank, United States Attorney, was on brief, for
appellee.

April 2, 2021

**LYNCH**, <u>**Circuit Judge**</u>. Richard Sylvester was convicted, pursuant to a conditional plea agreement, on one count of possession with intent to distribute various controlled substances and one count of possession of a firearm in furtherance of a drug-trafficking crime in violation of federal law. Sylvester appeals the denial of his motion to suppress a firearm and drug evidence seized pursuant to a search warrant for the car he was driving when he was arrested on a different and outstanding federal warrant. He argues that the search warrant for the car was invalid because it was issued based on evidence discovered during an inventory search, which was, he alleges, itself unlawful because he argues the initial impoundment of the car was unlawful after he was arrested along a busy highway at night. The district court rejected these arguments and we find no error.

I.

A.   <u>Facts</u>

The parties stipulated to the facts contained in the various exhibits submitted to the district court, which establish the following.

### 1.   The Arrest and Impound

In or around May 2017, a federal warrant was issued for Sylvester's arrest for suspected drug activity said to have occurred in August 2016. Around 7:30 P.M. on Friday, May 19, 2017, Maine Drug Enforcement Agency ("MDEA") Special Agent Jacob Day

("Agent Day") was driving off duty along Route 1A in Dedham, Maine. Route 1A is a major highway that runs along the coast of Maine to the Canadian border. Agent Day passed a black Cadillac Escalade driven by Sylvester. Sylvester was alone in the car. Agent Day recognized Sylvester and was aware of the outstanding federal warrant for his arrest from speaking with a United States Drug Enforcement Agency ("DEA") agent a few weeks before.

Agent Day ran a registration check on the Escalade's plate number which revealed that the owner of the car was Hailee Goodwin, who lived in Hancock, Maine. She was later determined to be Sylvester's girlfriend. Agent Day called the DEA agent with whom he had previously spoken and she confirmed that the federal arrest warrant was still active and that Sylvester should be arrested.

Agent Day contacted Lieutenant Tim Cote ("Lt. Cote") of the Hancock County Sheriff's Department to request the arrest of Sylvester pursuant to that warrant. At some point, Agent Day also requested that a K-9 unit be brought in to conduct a sniff test of the exterior of the Escalade.

Acting on the federal warrant and at Agent Day's request, Lt. Cote went with Sheriff's Deputies Corey Bagley ("Dep. Bagley") and Jeffrey McFarland ("Dep. McFarland") and another officer to Route 1A to locate the Escalade. They stopped the Escalade sometime after 7:30 at night along Route 1A in or near Ellsworth,

- 3 -

Maine.  Sylvester, the sole occupant, was told to get out of the car and was arrested.

Videos of the traffic stop recorded on the officers' dashboard cameras show that Route 1A is and was on that Friday night a well-trafficked, two-lane highway, and that the parked Escalade was sticking out into the traffic lane so that the cars passing by had to swerve into the oncoming traffic lane to avoid it.  During Sylvester's arrest, Dep. Bagley found two knives, a pair of brass knuckles, and a wad of $2,799 in cash on Sylvester.  Sylvester told the officers there were no other weapons in the car (that proved not to be true).  He also told them he was headed "up the road" to meet Goodwin's mother, but not Goodwin, at a McDonald's.  There is no evidence as to how far away the McDonald's was or whether Goodwin's mother was authorized by Goodwin to drive the car or whether Goodwin's mother was available to come retrieve the Escalade promptly or how she would do so.  Nor is there evidence that Sylvester specifically requested that Goodwin's mother or anyone else come remove the stopped car.

The officers transported Sylvester to the Hancock County Jail where he was booked on the federal arrest warrant.  The Hancock County officers did not inform Sylvester that he could contact someone, nor did he make any such request.  They also did not ask him whether he had a preferred towing service.

- 4 -

During the stop, Lt. Cote requested the Maine State Police to do the K-9 sniff as MDEA Agent Day had requested. He was told that it would take some time because the K-9 unit was traveling from a different county. Lt. Cote authorized a towing service to remove the car from the side of the highway and take it to an impound facility in Hancock.

### 2.   The Impound and Inventory Policies

The stop of the Escalade was at the request of a MDEA agent and a federal DEA agent who are not subject to the Hancock County Sheriff's Department's policies, but Hancock County Sheriff's Department officers made the stop and are subject to those policies.[1]  There are two Hancock County policies that are relevant to this appeal: the "TOWING/WRECKERS" policy ("the Impound Policy") and the "VEHICLE INVENTORY" policy ("the Inventory Policy").  The Impound Policy authorizes law enforcement to tow and to store a vehicle under certain circumstances, including where the vehicle "[i]mped[es] or [e]ndanger[s] [t]raffic."  The Impound Policy specifies that "[n]o vehicle shall be stopped or left unattended in such a manner as to impede or render dangerous the use of the highway by others, except in cases of mechanical breakdown, law enforcement emergency or traffic crash," and "[i]f such disabled vehicle is not promptly removed

---

[1]   The government has assumed and has not argued to the contrary that the Hancock County policies apply.

the law enforcement officer may order the vehicle towed at the expense of the owner."  The policy further states that

> [w]henever possible, owners or operators of vehicles for which towing is required will be encouraged to specify a towing service of their own choice.  When required, the law enforcement officer will summon a tow truck, unless a specific request for a particular tow service has been made by the owner or operator of the vehicle to be towed, and if such tow service is reasonabl[y] available.

The policy reiterates that "[w]hen a wrecker service is needed, the law enforcement officer shall ask the vehicle owner/operator if they have a preference of wrecker service," and if they do, the law enforcement officer will arrange for that tow/wrecker service to be contacted.  But "[w]hen a wrecker service is NOT at the owners' request, [it] would be considered a law enforcement tow."  An inventory search is required of all vehicles taken into police custody because of a law enforcement tow "if the vehicle is unlocked prior to the wrecker towing the vehicle" or "if the wrecker operator has to open the vehicle prior to towing it."

The Inventory Policy, in turn, provides that before taking a vehicle into custody "[w]here the owner or operator in possession of a vehicle is arrested . . . , and the vehicle is not required as evidence and need not be impounded for any other reason, the law enforcement officer" shall

> [a]dvise the owner or operator that they may release the vehicle to a licensed driver who is willing to assume full responsibility for the vehicle and all property contained therein. This person must be at the scene or be able to arrive prior to the law enforcement officer leaving. . . . If the owner or operator chooses not to release the vehicle to a third party, the vehicle shall be removed by an agency-dispatched wrecker. A[n] inventory will not be required if not impounded.

Where the police have taken a vehicle into police custody as a law enforcement tow, and so requiring an inventory of the vehicle pursuant to the two policies, the Inventory Policy explains that

> [t]he inventory will be completed by the law enforcement officer ordering the tow and will include the opening of closed containers and the listing of their contents. The purpose of the inventory is not to locate evidence of criminal activity, but to protect the owner[']s property, protect the agency from subsequent claims of loss or stolen property, and to protect law enforcement officers from dangerous instrumentalit[ies].

Among its standard procedures for conducting an inventory, the Inventory Policy prescribes that "[t]he scope of such an examination for personal property must be restricted solely to those areas where the person would ordinarily be expected to store or inadvertently leave his belongings, such as the floor, glove compartment, door pockets, trunk, dashboard, and on, under, and behind the seats."

### 3. The Inventory Search and Search Warrant

At the impound facility, the Maine State Police K-9 unit conducted a sniff of the exterior of the Escalade. The police dog did not alert to any contraband. Lt. Cote, Dep. Bagley, and Dep. McFarland then conducted an inventory search of the car. During the inventory search, the officers found a wallet containing Goodwin's driver's license in the backseat area, a cell phone in the middle console, and a backpack in the front passenger area. Inside the backpack, the officers found a loaded 9 mm handgun, a plastic bag containing eight bundles of what the officers suspected was heroin, and another plastic bag containing four chunks of a white hard substance which the officers suspected was cocaine. At that point, the officers agreed to stop the inventory search and contact Agent Day so that the MDEA could obtain a search warrant for the car. They left the evidence in the car, secured the car with evidence tape, and locked it in a garage at the impound facility.

On Sunday, May 21, 2017, two days after Sylvester had been arrested, another MDEA special agent listened to a recorded phone conversation made that day from the Hancock County Jail, in which Sylvester was heard telling a woman "he had 10 grand in the vehicle and it would be good if Hailee could get the vehicle out of impound."

On Monday, May 22, 2017, Agent Day listened to the same recorded conversation. That day, Agent Day applied for and obtained a search warrant for the Escalade which authorized the search of the entire car for drugs, firearms, evidence of drug trafficking, and cell phones. In the affidavit submitted with the warrant application, Agent Day described the circumstances of Sylvester's arrest on the federal warrant, the seizure of the cash, the negative K-9 sniff, the handgun and suspected drugs discovered in the backpack in the front of the car during the inventory search, and the recorded jail call in which Sylvester stated there was ten grand in the car. The officers executing the search warrant of the Escalade recovered a loaded 9 mm handgun, ammunition, methamphetamine, heroin, cocaine, drug paraphernalia, a cell phone, and suspected drug ledgers. They did not find the money Sylvester mentioned in the jail call.

B. Procedural History

In July 2017, Sylvester was indicted on one count of possession with intent to distribute cocaine, heroin, and five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and one count of possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). In September 2017, Sylvester filed a motion to suppress the evidence seized from the car he was driving at the time he was arrested, challenging the lawfulness of the impound

decision and the inventory search and the issuance of the search warrant.[2]

The district court held argument based on the stipulated facts on the motion to suppress on February 14, 2018. Defense counsel argued that the officers were "towing [the car] for an investigatory purpose" and were "not towing it under the community caretaking function." Defense counsel also argued that the officers' conversation captured by the dash-cam videos "is all driven by, we want to search this vehicle, can we figure out a way to lawfully do that," rather than "conceptualizing it as [] this [is] an impoundment and an inventory tow because we don't have somebody else to drive it away." The court responded that "your argument is subterfuge" and defense counsel stated "[i]t is a subterfuge, and I think there is an investigatory purpose to taking this vehicle from the side of the road to that tow yard." Defense counsel argued that this investigatory purpose was in part evidenced by the officers' failure to fully comply with the Impound and Inventory Policies. But defense counsel did not ask the district court to make a finding as to the reasons the officers deviated from the policies by not notifying Sylvester that he could

---

[2] The government did not contest Sylvester's standing to challenge the impound and searches of the car based on an affidavit he submitted stating that Goodwin authorized him to drive the Escalade.

- 10 -

contact a third party, including a preferred towing service, to remove the car from the highway.

On February 15, 2018, the district court orally denied Sylvester's motion to suppress. After concluding there was no probable cause to search the car at the time Sylvester was arrested, the district court held that the officers were justified in impounding the car and inventorying its contents pursuant to the community caretaking exception to the warrant requirement. It found that the officers' cruisers' "video cams show that" "[t]his was a stop and arrest on a busy highway in the breakdown lane." The court also found "[t]here was no other driver on the scene" and "the car needed to be moved" "because of its circumstances on the highway," which provided "solid noninvestigatory reasons for moving the car."

Turning to the alleged violations of the Impound and Inventory Policies, the court concluded that the "deputies violated the Hancock County policies by not trying to reach out to [the defendant's girlfriend], give her the choice of taking the vehicle if she could before they left the scene, or telling Sylvester that he had first choice of what towing service to use, but that they did not violate the policy in actually removing the vehicle."

Nonetheless, the court made findings that the policies authorized the impound in this situation where the driver had been

arrested, the car was left dangerously along the side of the road, and there was no one immediately available to remove the car. And it found

> there's no evidence that [] Sylvester asked
> for an alternative to impoundment, [and] the
> record doesn't make clear how it even could
> have happened. The car belonged to the
> girlfriend . . . who was not on the scene.
> And on this record there is no evidence of a
> viable alternative to getting someone to the
> scene to remove the car before law enforcement
> le[ft].

After reviewing First Circuit case law, the district court found that "there's no subterfuge in the need to move the car off the highway." It found that "there was an investigatory motive for the impoundment[ which was] clear from listening to the dash cam audio," but further concluded that the "co-existence of investigatory and caretaking motives" "d[id] not irreparably taint the impound" under First Circuit law.

Having held the initial impound of the car was valid, the district court found that the subsequent inventory search was conducted "according to established policy" and so concluded it was also valid. The district court also held that regardless of whether there was a policy violation during the inventory search, there was probable cause to issue the search warrant for the car even without the information learned from the inventory search based on the federal arrest warrant, the circumstances of the

- 12 -

arrest, and the jail call regarding the purported ten grand in the car.

Sylvester entered into a conditional plea agreement with the government in October 2018, subject to his ability to appeal the denial of his motion to suppress, and was sentenced in October 2019 to seventy-two months' imprisonment.[3]  This timely appeal from his conviction followed.

## II.

Sylvester argues the district court's denial of his motion to suppress was error.  He argues that (1) the officers' decision to impound the car was unlawful because it was done solely for an investigatory purpose; (2) the subsequent inventory search was unlawful because it was tainted by the initial unlawful impound and the search warrant was not an independent source for the evidence discovered during that inventory search; and (3) the automobile exception to the warrant requirement did not justify the search of the car.[4]  To be clear, Sylvester does not argue that the initial stop of the car or his arrest were unlawful.

_____

[3]  Sylvester also pleaded guilty to one count of conspiracy to distribute controlled substances in a separate case and was sentenced to thirty months' imprisonment to be served concurrently with the sentence imposed in this case.  That separate conviction and sentence are not being challenged here.

[4]  The government conceded before the district court and on appeal that the inventory search and search warrant were valid only if the initial impound decision was also lawful.  The government also does not challenge the district court's

- 13 -

In reviewing the denial of a motion to suppress, "[w]e review factual findings for clear error and legal conclusion[s] de novo." United States v. Coccia, 446 F.3d 233, 237 (1st Cir. 2006). "[W]e will uphold a denial of a motion to suppress if any reasonable view of the evidence supports it." Id. (quoting United States v. Garner, 338 F.3d 78, 80 (1st Cir. 2003)). Where the evidence of record is subject to different reasonable interpretations, "the district court's choice between competing inferences cannot be clearly erroneous." United States v. Hughes, 640 F.3d 428, 437 (1st Cir. 2011).

A. The Impound Decision

The district court found that the impoundment of the car and its removal from busy Route 1A was a proper exercise of the officers' community caretaking function. The community caretaking function "is one of the various exceptions to the Fourth Amendment's requirement that law enforcement officers have probable cause and obtain a warrant before effecting a search or seizing property." United States v. Rivera, 988 F.3d 579, 581 (1st Cir. 2021) (quoting Boudreau v. Lussier, 901 F.3d 65, 71 (1st Cir. 2018)). "Under that exception, law enforcement officers, in 'their role as "community caretakers,"' may 'remove vehicles that

---

determination that there was not probable cause to search the car under the automobile exception to the warrant requirement at the time the car was stopped and Sylvester was arrested.

impede traffic or threaten public safety and convenience' without obtaining a warrant." Id. (quoting Boudreau, 901 F.3d at 72). Our law has been clear on this point for years.

Pursuant to that exception, an impound decision is constitutionally valid so long as it is reasonable under the totality of the circumstances. See Coccia, 446 F.3d at 238-39; United States v. Rodriguez-Morales, 929 F.2d 780, 785-86 (1st Cir. 1991). The impound decision must be justified by a legitimate, non-investigatory purpose and cannot be "a mere subterfuge for investigation, [but] the coexistence of investigatory and caretaking motives will not invalidate the seizure." Coccia, 446 F.3d at 241 (quoting Rodriguez-Morales, 929 F.2d at 787); see also Colorado v. Bertine, 479 U.S. 367, 372 (1987); United States v. Del Rosario, 968 F.3d 123, 128-29 (1st Cir. 2020) ("To be clear, we are not saying that an improper subjective motive renders the community-caretaking exception inapplicable.");[5] Boudreau, 901 F.3d at 72-73; Rodriguez-Morales, 929 F.2d at 787 ("[T]he impoundment of the [car] in the exercise of the troopers' community caretaking responsibilities was amply justified on objective

---

[5] The Court in Del Rosario held that an impound decision was invalid where there was no real objective justification for it pursuant to the officers' community caretaking function, such that the only conclusion was "that the seizure served no purpose other than facilitating a warrantless investigatory search under the guise of an impoundment inventory." 968 F.3d at 127-29.

grounds.  Hence, any speculation into the troopers' subjective intent would be supererogatory.").

As to standardized procedures when impounding a vehicle, this Court has already held that

> it is inappropriate for the existence of (and adherence to) standard procedures to be the sine qua non of a reasonable impound decision[.] . . .
> . . . .
> . . . [S]tandard protocols have limited utility in circumscribing police discretion in the impoundment context because of the numerous and varied circumstances in which impoundment decisions must be made. Moreover, a police officer's discretion to impound a car is sufficiently cabined by the requirement that the decision to impound be based, at least in part, on a reasonable community caretaking concern and not exclusively on "the suspicion of criminal activity."  Accordingly, the impoundment of [the defendant]'s car did not violate the Fourth Amendment merely because there was no evidence that the impoundment was done pursuant to pre-existing police protocols.

Coccia, 446 F.3d at 239 (emphasis added) (citations omitted) (quoting Bertine, 479 U.S. at 375).

The district court, it is true, explicitly found that the officers were motivated in part by an investigatory purpose. But it went on to cabin that holding and also held that the officers clearly had a legitimate and objectively reasonable non-investigatory purpose.  As it found, the car Sylvester was driving when he was stopped and arrested was on the verge of a busy highway. There were no other passengers nor anyone else immediately

available to remove the car. Sylvester indeed never asserted that the owner of the car was nearby or that anyone else could immediately retrieve the car. Leaving the car on the shoulder of a heavily trafficked highway was an obvious hazard to other drivers, especially on a Friday night with darkness approaching.

Under these circumstances, the court did not err in holding that the officers clearly had a legitimate community caretaking justification for moving the car. See id. at 240 ("Caselaw supports the view that where a driver is arrested and there is no one immediately on hand to take possession, the officials have a legitimate non-investigatory reason f[or] impounding the car." (quoting Vega-Encarnación v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003))); Rodriguez-Morales, 929 F.2d at 785 (holding that the impound decision was reasonable where "leav[ing] an automobile on the shoulder of a busy interstate highway" after arresting the occupants would pose a threat to public safety).

The presence of both investigatory and community caretaking motives does not render unlawful an objectively reasonable decision to impound. Coccia, 446 F.3d at 241. And the officers were not constitutionally required to "select the least intrusive way of fulfilling their community caretaking responsibilities." Rodriguez-Morales, 929 F.2d at 786; see also Bertine, 479 U.S. at 373-74; Coccia, 446 F.3d at 240 n.7 (explaining that there is no Fourth Amendment requirement that

officers "provide [the defendant] with an opportunity to arrange for someone else to pick-up the car" before impounding and inventorying it (citing Vega-Encarnación, 344 F.3d at 41)). The officers' failure to fully comply with the Impound and Inventory Policies with respect to the impoundment does not change this result. See Coccia, 446 F.3d at 239.

The defendant does argue that the sole purpose of the impound was investigatory, based on the fact that the officers violated aspects of the Hancock County Impound and Inventory Policies by not notifying him that he could request a third party to immediately remove the car and thus created the need for impoundment. See Coccia, 446 F.3d at 241 ("[T]here were legitimate community caretaking justifications for impounding [the defendant]'s car and there was no evidence that these justifications were merely pretext for an investigatory search.").

But, Sylvester did not ask the district court to make a specific finding about why the officers did not comply with those aspects of the policies and none was made, thus precluding any such argument from having merit, even if we were to assume that it otherwise might.[6]  And that failure invokes the plain error

_____

[6] Because of the defendant's failure to request such a finding, we have no need to address who has the burden of proving pretext in this context. We note that two other circuits have addressed the question in the same context or in similar contexts and held the burden is on the defendant. See United States v. Orozco, 858 F.3d 1204, 1213 (9th Cir. 2017); United States v.

- 18 -

standard of review.  It is self-evident there was no plain error. See United States v. Takesian, 945 F.3d 553, 563 (1st Cir. 2019) (explaining that "if an error pressed by the appellant turns on 'a factual finding [he] neglected to ask the district court to make, the error cannot be clear or obvious unless' he shows that 'the desired factual finding is the only one rationally supported by the record below'" (alteration in original) (quoting United States v. Olivier-Diaz, 13 F.3d 1, 5 (1st Cir. 1993))).

B.   The Inventory Search

We also hold that the district court did not err in concluding that the subsequent inventory search of the car was lawful.  "The Fourth Amendment permits a warrantless inventory search if the search is carried out pursuant to a standardized policy," United States v. Richardson, 515 F.3d 74, 85 (1st Cir. 2008) (citing Florida v. Wells, 495 U.S. 1, 3-4 (1990)), and "on the basis of something other than suspicion of evidence of criminal activity," Bertine, 479 U.S. at 375.  The district court did not clearly err in finding that, once the car was impounded, the inventory search of the car was conducted in accordance with the Hancock County Inventory Policy.  That policy states legitimate,

---

Maestas, 2 F.3d 1485, 1489 (10th Cir. 1993); see also United States v. Magdirila, 962 F.3d 1152, 1157-58 (9th Cir. 2020) (applying Orozco's burden allocation rule to the inventory context); United States v. Johnson, 889 F.3d 1120, 1125-28 (9th Cir. 2018) (per curiam) (applying Orozco's burden allocation rule to the impound and inventory context).

- 19 -

non-investigatory purposes.  To the extent Sylvester argues that the inventory search itself was invalid because that search was also pretextual, that argument fails for the same reasons that his other pretext argument does.

III.

The district court committed no error in denying Sylvester's motion to suppress.

<u>Affirmed</u>.