**FILED**



OCT 21 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    21-30251 |
| Plaintiff-Appellee, | D.C. No. 3:18-cr-00130-TMB-MMS-1 |
| v. | District of Alaska, Anchorage |
| MARKANTHONY DELEON SAPALASAN, | ORDER |
| Defendant-Appellant. | |

Before:  HAWKINS, R. NELSON, and COLLINS, Circuit Judges.

The memorandum disposition filed on September 18, 2024 (Dkt. No. 48) is amended as follows: on page 3 of the dissent, lines 10–12, delete the following text:

> <, and the majority relies on *United States v. Rivera*, 988 F.3d 579, 580–82 (1st Cir. 2021), which also involved an impounded vehicle where the defendant was not under arrest>

The Petition for Panel Rehearing and Rehearing En Banc (Dkt. No. 49), filed on September 20, 2024, remains pending.

Panel

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-30251 |
| Plaintiff-Appellee, | D.C. No. 3:18-cr-00130-TMB-MMS-1 |
| v. | |
| MARKANTHONY DELEON SAPALASAN, | AMENDED MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted September 12, 2023
Seattle, Washington

Before: HAWKINS, R. NELSON, and COLLINS, Circuit Judges.
Dissent by Judge HAWKINS.

Around 3 a.m., Markanthony Sapalasan was arrested with probable cause for potential involvement in a murder. His backpack was taken and searched, but nothing of note was found. Officer Tae Yoon placed the backpack in his patrol car, and Sapalasan was taken to the police station for questioning. After questioning,

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Sapalasan was released from detention. Before the end of his shift at 9 a.m., Officer Yoon conducted an inventory search of Sapalasan's backpack, which he had retrieved from his squad car. Officer Yoon found methamphetamine in the backpack. Sapalasan was convicted of two drug felonies as a result, and he appeals the district court's denial of his motion to suppress the methamphetamine found during the inventory search conducted by Officer Yoon.

"We review de novo motions to suppress, and any factual findings made at the suppression hearing for clear error." *United States v. Basher*, 629 F.3d 1161, 1165 (9th Cir. 2011) (cleaned up). For purposes of this appeal, Sapalasan expressly concedes that "the initial seizure" of his backpack was lawful and that "separating him from the backpack during transport and interrogation by detectives was lawful."

Inventory searches "not only deter[] false claims but also inhibit[] theft or careless handling of articles taken from [an] arrested person." *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983). Given Sapalasan's concessions concerning the lawfulness of the seizure of his backpack, the district court properly denied Sapalasan's motion to suppress because the search at issue was a good-faith inventory search, made in substantial compliance with police policy.

First, the police had lawful custody of Sapalasan's backpack at the point of his arrest. *United States v. Mancera-Londono*, 912 F.2d 373, 376 (9th Cir. 1990) ("[B]efore an inventory search is permissible, the government must have legitimate

2

custody of the property to be inventoried, either as a result of lawful arrest or by some other method." (quoting *United States v. Jenkins*, 876 F.2d 1085, 1089 (2d Cir. 1989) (alteration in original)).

Second, Officer Yoon's inventory search satisfied reasonable police regulations and was administered in good faith.[1] *United States v. Bowhay*, 992 F.2d 229, 230 (9th Cir. 1993) ("To be valid, an inventory search must conform to a standardized and established local procedure, and must be motivated by a 'concern to inventory [the items] rather than to search for other incriminating evidence.'" (citation omitted) (alteration in original)). The APD's "Evidence-Handling and Submission" Policy states that "all property collected under the color of authority shall be submitted on the date collected, received, seized, or no later than the end of the employee's assigned shift, or detail, directly to the Evidence Section[.]"

Although Officer Yoon did not "immediately make an inventory list" of Sapalasan's backpack, he still "submitted" the collected property at the end of his shift. It was not unreasonable for Yoon to maintain custody of the backpack and conduct the inventory search at the end of his shift. Yoon thus "complied substantially" with department policy. *United States v. Magdirila*, 962 F.3d 1152,

---

[1] Sapalasan does not contest that Officer Yoon administered the search in good faith.

3

1158 (9th Cir. 2020).  And because of this compliance, Yoon exercised a lawful inventory search of Sapalasan's backpack at the stationhouse.

**AFFIRMED.**

*United States v. Sapalasan*, 21-30251

Hawkins, Circuit Judge, dissenting:

I respectfully disagree with the majority's conclusion regarding the inventory search of Sapalasan's backpack at the police station after he had already been released from questioning. In the Supreme Court's landmark holding on stationhouse inventory searches in *Illinois v. Lafayette,* 462 U.S. 640 (1983), the Court concluded: "We hold it is not unreasonable for police, as part of the routine procedure *incident to incarcerating an arrested person*, to search any container or article in his possession, in accordance with established inventory procedures." 462 U.S. at 648 (emphasis added).

Although the majority relies principally on the initial separation of Sapalasan from his backpack, the Court emphasized the specific context of the inventory search on at least four separate occasions in the opinion, concluding that such a search was reasonable in balancing the policy considerations underlying the search and *the specific context of an arrestee who is about to be jailed* (and thus about to be separated from his belongings for some extended period of time):

- "The question here is whether, consistent with the Fourth Amendment, it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police stationhouse *incident to booking and jailing the suspect*." *Id.* at 643 (emphasis added).

- "[T]he factors justifying a search of the person and personal effects of an arrestee upon reaching a police station *but prior to being placed in*

*confinement* are somewhat different from the factors justifying an immediate search at the time and place of arrest," and also noting that "an arrested person is not invariably taken to a police station or confined. *Id.* at 645 (emphasis added).

- "At the stationhouse, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of *an arrested person who is to be jailed*." *Id.* at 646 (emphasis added).

Another telling indication that the Supreme Court found the impending incarceration to be of critical importance is that it *remanded* the case so that the lower court could determine if the defendant was actually going to be imprisoned, as Lafayette's arrest was only for a misdemeanor of disturbing the peace: "The record is unclear as to whether respondent *was to have been incarcerated* after being booked for disturbing the peace. That is an appropriate inquiry on remand." *Id.* at 648 n.3 (emphasis added). If the incarceration status was unimportant to the analysis, the Court could have simply affirmed without remanding.

Our Ninth Circuit case law has also emphasized the significance of impending incarceration on the propriety of a jailhouse inventory search. In *United States v. Peterson*, the defendant moved to suppress evidence found during a jailhouse inventory search because he was arrested only for misdemeanor warrants, and under Washington law could have posted bail to avoid incarceration (and the search). 902 F.3d 1016, 1020 (9th Cir. 2018). Significantly, we *agreed* with the defendant that the inventory search *would have been unlawful* if the officers had conducted the search prior to providing the defendant the opportunity to post bail. *Id.* at 1020.

2

However, the arresting officer had also testified at the suppression motion that if Peterson had posted bail on the misdemeanor charge, the officer would have instead booked and incarcerated Peterson on a charge of resisting arrest for which no bail had been set; we therefore affirmed the denial of the motion to suppress under the doctrine of inevitable discovery. *Id.*

Neither the government nor the majority have cited a published case upholding a stationhouse inventory search of someone's belongings who was not also in the process of being booked and incarcerated. The government principally relies on *Colorado v. Bertine*, 479 U.S. 367 (1987), which permitted an inventory search of an impounded vehicle. But vehicles have long been recognized as subject to lower expectations of privacy, *New York v. Class*, 475 U.S. 106, 112–13 (1986), and there are various reasons apart from arrest and incarceration, including the community caretaking function, in which the police may need to impound a vehicle encountered in the field and conduct an inventory search in conjunction with such impound. But even then, we have recognized that the *initial* impound and inventory justification *can dissipate* depending on the factual circumstances; if, for example, a licensed driver arrives on scene who could take possession of the vehicle instead. *See Sandoval v. County of Sonoma*, 912 F.3d 509, 516–17 (9th Cir. 2018).

In this case, Sapalasan was never booked, let alone incarcerated. He was questioned by police, determined to be a witness to—but not a suspect in—the

3

shooting, and released. Like an arrestee who makes bail to avoid incarceration, or the arrested driver of a vehicle who provides an alternate person to retrieve his car, Sapalasan's release after questioning obviated any continuing justification for the police to hold or search his property. I am thus unconvinced by the majority's emphasis on the initial separation of Sapalasan from his backpack, as it ignores the reality of the circumstances at the time of the actual inventory search.

The majority also refuses to follow Ninth Circuit case law that *requires* us to consider whether the inventory search complied with existing state law requirements as part of the Fourth Amendment analysis. Ordinarily, when applying federal constitutional law, we need not make such an inquiry. But as we explained in *United States v. Cormier*:

> There are two exceptions to the general rule that state law violations do not require suppression of evidence in federal court. The first exception arises when a court is determining the legality of an inventory search, because "federal law on inventory searches by state or local police officers *[requires] that they must be conducted in accordance with the official procedures of the relevant state or local police department.*

220 F.3d 1103, 1111 (9th Cir. 2000) (emphasis added).

In *United States v. Wanless*, we thus analyzed the defendant's Fourth Amendment claim pertaining to the legality of a vehicle inventory search by looking first to Washington law. We noted that the Washington State Trooper's manual appeared to require an inventory search of *any* impounded vehicle, but we also

4

recognized that "Washington courts have placed a limitation on the search requirement." 882 F.2d 1459, 1463 (9th Cir. 1989). Washington case law requires troopers to first ask the owner, if present, if he would consent to the vehicle search; the person then has the option to decline, take the chance that loss will occur, and avoid the search. *Id.* We concluded that the trooper's failure to follow this state-court-imposed limitation on their inventory search procedure rendered the resulting search illegal under the federal constitution, even though it was otherwise conducted in accordance with the police manual. *Id.*

So, too, here, there is a procedure manual that appears to authorize an inventory search of virtually any item that comes into the police's possession. But there is also Alaska case law holding that a warrantless stationhouse inventory search is without justification *when an arrestee is not going to be incarcerated*, and imposing additional obligations on officers, such as permitting the arrestee a reasonable opportunity to make bail and to avoid incarceration and the corresponding search. *Zehrung v. State of Alaska*, 569 P.2d 189, 193, 195 (Alaska 1977) ("We recognize that our decision necessitates invalidating a standard procedure at the jail."); *Gray v. State of Alaska*, 798 P.2d 346 (Alaska 1990) (reiterating that, absent specific exigencies, even if an arrestee is to be placed in a holding cell while being given a reasonable time to make bail, only a limited patdown for weapons is permissible, and a full inventory search can only be

5

conducted if the person is to be incarcerated).[1] In other words, conducting an

inventory search pursuant to a broad department policy does not constitutionally

authorize every inventory search, particularly if the law of that state has judicially

limited that authority to certain situations (such as when an impounded car's owner

gives consent or when an arrestee is actually going to be incarcerated).[2]

It is true that Sapalasan did not cite *Zehrung* in district court or in his opening

brief. However, he clearly raised the *claim* that the stationhouse inventory search

was invalid under the Fourth Amendment and cited analogous Ninth Circuit cases

such as *Peterson,* which in turn looked to underlying state law to determine the

propriety of the search. *See Peterson*, 902 F.3d at 1020. As we explained in

*Thompson v. Runnels*:

> Once "an issue or claim is properly before the court, the court is not
> limited to the particular legal theories advanced by the parties."
> [*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, (1991).] Instead,

---

[1] The Anchorage police department has apparently paid little attention to these decisions. In 2000, an Alaska court of appeals judge noted in a concurrence that it appeared the Anchorage jail was still conducting inventory searches of all arrestees, including those who could make bail, and that "these procedures are essentially the same ones declared illegal twenty years ago in *Zehrung*." *Castleberry v. State*, 2000 WL 530686 *4-5 (Ala. Ct. App. 2000).

[2] Certainly, these Alaska cases do not cover the specific situation in this case, in which the person was never booked or incarcerated. Predicting state law based on existing precedents, it seems reasonable to think that Alaska courts would expect Sapalasan to be given a reasonable amount of time to retrieve his backpack from the station prior to a caretaking inventory, much as an arrestee must be given a reasonable amount of time to make bail. We could also certify the question to the Alaska Supreme Court for clarity.

6

the court "retains the independent power to identify and apply the proper construction of governing law," *id.*, and is free to "consider an issue antecedent to . . . and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief," *U.S. Nat'l Bank of Oregon v. Ind. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (quoting *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990)) (internal quotation marks omitted); *see also In re Greene*, 223 F.3d 1064, 1068, n. 7 (9th Cir.2000) (holding that the court could consider a statutory interpretation argument not specifically raised by the defendant because, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties." (quoting *Ind. Ins. Agents*, 508 U.S. at 446)).

705 F.3d 1089, 1098 (9th Cir. 2013).

We are required to consider whether the inventory search Sapalasan challenged was authorized and conducted in accordance with state law in order to determine his clearly raised federal claim. *Comier*, 220 F.3d at 1111. Having raised the appropriate legal claim, it is our duty to determine its merits, which in turn necessitates investigating Alaskan law, whether Sapalasan cited the case or not.

I would grant Sapalasan's motion to suppress the contents of the backpack.